**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 2, 2004**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                      No. 120489

MELISSA ANN NUTT,

    Defendant-Appellant.

_____

**BEFORE THE ENTIRE BENCH**

**YOUNG, J.**

At issue in this case is the prohibition against successive prosecutions found in Const 1963, art 1, § 15, Michigan's Double Jeopardy Clause. In particular, we are called upon to determine the meaning of the term "same offense" as used in art 1, § 15. Until 1973, Michigan had defined that term to mean the "same crime" such that, where a defendant had committed a series of crimes with different elements, the defendant could be prosecuted serially for each distinct crime, irrespective of whether the crimes

were committed during the course of one crime spree or "transaction." Thus, our Double Jeopardy Clause had, until 1973, consistently been interpreted to preclude serial prosecutions only of crimes sharing identical elements. In *People v White*, 390 Mich 245; 212 NW2d 222 (1973), this Court abandoned the "same-elements" test in favor of a "same transaction" test that prohibits serial prosecutions for entirely different crimes that were committed during a single criminal episode.

Because defendant challenges as an unconstitutional successive prosecution under the *White* same transaction test her prosecution for receiving and concealing stolen weapons in Oakland County after being convicted of second-degree home invasion in Lapeer County, we must determine whether the *White* test is consonant with art 1, § 15. We conclude that, by abandoning the same-elements test, the *White* Court ignored the ratifiers' common understanding of the "same offense" term in our Constitution. Accordingly, we overrule *White*, reinstate the same-elements test, and affirm, on different grounds, the Court of Appeals' holding that defendant may be prosecuted in Oakland County for receiving and concealing stolen firearms.

2

## I. FACTS[1] AND PROCEDURAL HISTORY

On December 10, 1998, Darrold Smith's home in Lapeer County was burglarized. Four firearms and a bow and arrows were stolen from the home. Lapeer County police officers and those of adjacent Oakland County conducted a joint investigation concerning three Lapeer County burglaries, including the burglary of Smith's home. The officers obtained a search warrant for a cabin in Oakland County that was occupied by defendant and John Crosley. During the execution of the warrant on December 14, 1998, three of Smith's stolen firearms were found hidden underneath a mattress inside the cabin. Smith's bow and arrows and property stolen from another residence were also seized during the search.

Defendant confessed to a Lapeer County detective that she participated as a getaway driver during three burglaries that occurred the week of December 10, 1998, including the burglary of the Smith residence. Defendant admitted that three of the guns stolen from Smith were concealed underneath a mattress in the Oakland County cabin.

---

[1] Trial has not yet occurred in this matter. Our recitation of facts is drawn from the preliminary examination transcript and other documents in the record.

3

In January 1999, defendant was charged in Lapeer County with three counts of second-degree home invasion and three counts of larceny in a building. Meanwhile, on February 16, 1999, an arrest warrant was issued in Oakland County alleging that defendant had committed one offense of receiving and concealing a stolen firearm.[2]

On February 22, 1999, defendant pleaded guilty in Lapeer County of one charge of second-degree home invasion[3] in connection with the burglary of the Smith residence and the theft of the firearms. The remaining five charges were dismissed pursuant to a plea agreement. Defendant was sentenced to probation.

In July 1999, defendant was bound over for trial in Oakland County on the charge of receiving and concealing a stolen firearm. Defendant moved to dismiss the charge, contending that it constituted an improper successive prosecution in violation of the double jeopardy clauses of the federal and state constitutions. Defendant argued that

---

[2] MCL 750.535b.

A second count in the complaint and warrant alleged that defendant had received stolen property in excess of $100 in violation of MCL 750.535 on the basis of the theft of Smith's bow and arrows, as well as electronics and other property stolen from another residence. This second count was dismissed following defendant's preliminary examination because of the unavailability of a complaining witness.

[3] MCL 750.110a(3).

4

pursuant to *White,* the state was required to join at one trial all charges arising from a continuous time sequence that demonstrated a single intent and goal. Thus, defendant maintained, she could not be tried in Oakland County for possession of the same firearms that she was alleged to have stolen during the home invasion for which she was convicted in Lapeer County.

The trial court granted defendant's motion to dismiss. The court cited *People v Hunt (After Remand)*, 214 Mich App 313; 542 NW2d 609 (1995), for the proposition that where a defendant is accused of one or more offenses not having specific intent as an element, the test for determining whether they constitute the same offense for the purpose of Michigan's Double Jeopardy Clause is whether the offenses involve laws intended to prevent the same or similar harm or evil. The court opined that because defendant in this case was charged with one "general intent crime" and one "specific intent crime," and because those offenses were designed to prevent similar harms, defendant could not be tried for receiving and concealing a stolen firearm following her conviction for home invasion.

The prosecution's appeal from the trial court's dismissal yielded three separate Court of Appeals opinions, the net result of which was to reverse the trial court's

5

order dismissing the charge.[4]   In the lead opinion, Judge Meter opined that the Oakland County prosecution did not violate the prohibition against double jeopardy because the home invasion charge and the receiving and concealing charge did not arise from the "same transaction"; that is, they did not arise out of a continuous time sequence and did not display a common goal.   Judge Meter relied on *People v Flowers*, 186 Mich App 652; 465 NW2d 43 (1990), in which the Court held that where the defendant robbed an individual in Oakland County and absconded to Wayne County with the victim's vehicle, he could be prosecuted in Oakland County for armed robbery notwithstanding his prior Wayne County conviction for possession of the stolen vehicle.   The *Flowers* Court held that the two offenses on different days were not part of the same criminal transaction.   Judge Meter stated that to the extent that *Hunt* conflicted with *Flowers*, the latter controlled because it was first decided.   Judge Meter further concluded that the harm or evil to be prevented by the home invasion statute differed substantially from the harm or evil to be prevented by the concealing stolen firearms statute: the former was directed toward peaceful habitation, while the

---

[4] Unpublished opinion per curiam, issued November 9, 2001 (Docket No. 225887).

6

latter was directed toward the trafficking of firearms, and the two statutes were located in different chapters of the Penal Code.

Judge Hoekstra issued a concurring opinion in which he indicated his disagreement with Judge Meter's conclusion that the home invasion offense and the receiving and concealing offense were not part of a continuous time sequence. Rather, Judge Hoekstra agreed with dissenting Judge Whitbeck's conclusion that the "actions of stealing, transporting, and then concealing the firearms for four days are logically part of the same criminal episode." However, relying on *People v Squires*, 240 Mich App 454; 613 NW2d 361 (2000), Judge Hoekstra determined that the two offenses did not "share a single intent and goal" as required by the second part of the *White* same transaction test and that defendant's double jeopardy claim therefore failed.

In dissenting Judge Whitbeck's view, *Hunt* was directly on point and required the conclusion that the two offenses arose out of a continuous time sequence and shared a single intent and goal. Judge Whitbeck noted that *Squires,* on which Judge Hoekstra relied, was distinguishable because it involved *multiple punishments* and not *successive prosecutions*. Judge Whitbeck also suggested that the

7

prosecutor had "never articulated any manifest necessity that would justify this separate prosecution."[5]

As the three-way split among the members of the Court of Appeals panel below and a number of conflicting previous Court of Appeals cases in the area demonstrate,[6] there appears to be significant difficulty inherent in application of the *White* rule. Accordingly, we granted defendant's application for leave to appeal. We also directed the parties to address

> whether *People v White*, 390 Mich 245 (1973), sets forth the proper test to determine when a prosecution for the "same offense" is barred on double jeopardy grounds under Const 1963, art 1, § 15, and whether our constitution provides greater protection than does US Const, Am V. See *United States v Dixon*, 509 US 688, 696-697 (1993). [467 Mich 901 (2002).]

---

[5] Judge Whitbeck cited our opinion in *People v Herron*, 464 Mich 593, 601-603; 628 NW2d 528 (2001), for the proposition that the prosecutor was required to articulate "manifest necessity" to bring a separate prosecution. In *Herron* we addressed the propriety of a retrial *following a mistrial*. Under such circumstances, either consent or "manifest necessity" is generally a constitutional prerequisite to retrial. We wish to clarify that the concept of manifest necessity is not implicated in the case before us, which does not involve a retrial following the declaration of a mistrial, and that the "manifest necessity" analysis was erroneously imported into this context.

[6] See n 22 and accompanying text.

8

## II. Standard of Review and Rules of Constitutional Construction

A double jeopardy challenge presents a question of constitutional law that this Court reviews de novo. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001); *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998).

At issue in this case is the meaning of the term "same offense" in art 1, § 15. Our goal in construing our Constitution is to discern the original meaning attributed to the words of a constitutional provision by its ratifiers. *People v DeJonge (After Remand)*, 442 Mich 266, 274-275; 501 NW2d 127 (1993). To this end, we apply the rule of "common understanding." *Lapeer Co Clerk v Lapeer Circuit Court (In re Lapeer Co Clerk)*, 469 Mich 146, 155; 665 NW2d 452 (2003); *People v Bulger,* 462 Mich 495, 507; 614 NW2d 103 (2000). In applying this principle of construction, the people are understood to have accepted the words employed in a constitutional provision in the sense most obvious to the common understanding and to have "ratified the instrument in the belief that that was the sense designed to be conveyed." 1 Cooley, Constitutional Limitations (6th ed), p 81. Constitutional Convention debates and the Address to the People are certainly relevant as aids in determining the intent of the ratifiers. *Lapeer Co Clerk, supra* at 156; *People v Nash*,

9

418 Mich 196, 209; 341 NW2d 439 (1983) (opinion by BRICKLEY, J.).[7]

### III. ANALYSIS

#### A. INTRODUCTION

The United States and Michigan Constitutions protect a person from being twice placed in jeopardy for the same offense. US Const, Am V;[8] Const 1963, art 1, § 15.[9] The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *People v Torres*, 452 Mich 43, 64; 549 NW2d 540 (1996), quoting *United States v*

---

[7] Additionally,

> our task is not to impose on the constitutional text at issue . . . the meaning we as judges would prefer, or even the meaning the people of Michigan today would prefer, but to search for contextual clues about what meaning the people who ratified the text *in 1963* gave to it. [*Mich United Conservation Clubs v Secretary of State (After Remand),* 464 Mich 359, 375; 630 NW2d 297 (2001) (YOUNG, J., concurring) (emphasis in original).]

[8] "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ."

[9] "No person shall be subject for the same offense to be twice put in jeopardy."

*Wilson*, 420 US 332, 343; 95 S Ct 1013; 43 L Ed 2d 232 (1975). The first two of these three protections concern the "successive prosecutions" strand of the Double Jeopardy Clause, which is implicated in the case before us.[10] In particular, because our Double Jeopardy Clause is essentially identical to its federal counterpart, we must determine whether the term "same offense" in our Constitution was, in *White,* properly accorded a meaning that is different from the construction of that term in the federal Constitution. We conclude that, at the time of the ratification of our 1963 Constitution, the people of this state intended that the words "same offense" be construed consistent with state and federal double jeopardy jurisprudence as it then existed. Because this Court strayed from that intent when it adopted the same transaction test, we overrule *White* and its progeny and return to the same-elements test, which had been

---

[10] The purpose of the constitutional protection against successive prosecutions is to prevent the state from making repeated attempts at convicting an individual for an alleged crime, subjecting him to "'embarrassment, expense and ordeal'" and compelling him "'to live in a continuing state of anxiety and insecurity,'" and enhancing the "'possibility that even though innocent he may be found guilty.'" *Herron, supra* at 601, quoting *Green v United States,* 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957); see also *Torres, supra* at 64.

11

consistently applied in this state until its abrogation by this Court in 1973.[11]

### B. FEDERAL SUCCESSIVE PROSECUTIONS PROTECTION AND THE SAME-ELEMENTS TEST

Application of the same-elements test, commonly known as the "*Blockburger* test,"[12] is the well-established method of defining the Fifth Amendment term "same offence." The test, which has "deep historical roots," *United States v Dixon*, 509 US 688, 704; 113 S Ct 2849; 125 L Ed 2d 556 (1993), "focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v United States*, 420 US 770, 785 n 17; 95 S Ct 1284; 43 L Ed 2d 616 (1975).

The *Blockburger* analytical framework "reflected a venerable understanding" of the meaning of the term "same offence" as used in the Double Jeopardy Clause. *Grady v*

---

[11] We wish to stress at the outset that we are not here concerned with the meaning of the term "offense" as it applies to the double jeopardy protection against *multiple punishments*. See *People v Colvin*, 467 Mich 942 (2003) (CORRIGAN, C.J., concurring); *Herron, supra*; *People v Robideau*, 419 Mich 458; 355 NW2d 592 (1984). Our analysis is limited to the successive prosecutions strand of Const 1963, art 1, § 15.

[12] *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932).

*Corbin*, 495 US 508, 535; 110 S Ct 2084; 109 L Ed 2d 548 (1990) (Scalia, J., dissenting). The Clause was designed to embody the protection of the English common-law pleas of former jeopardy, "auterfoits acquit" (formerly acquitted) and "auterfoits convict" (formerly convicted), which applied only to prosecutions for the identical act and crime. See *id.* at 530; *Wilson*, supra at 339-340; 4 Blackstone, Commentaries on the Laws of England (4th ed, 1970), pp 335-336.[13] An examination of the historical record reveals that "[t]he English practice, as understood in 1791, did not recognize auterfoits acquit and auterfoits convict as good pleas against successive prosecutions for crimes whose elements were distinct, even though based on the same act." *Grady, supra* at 535.

American courts have long recognized and applied this common-law understanding of the meaning of the double jeopardy prohibition against multiple prosecutions and punishments for the "same offence." See, e.g., *Commonwealth v Roby*, 29 Mass 496; 12 Pick 496 (1832) ("In considering the identity of the offence, it must appear by the plea, that the offence charged in both cases was the

---

[13] "That the framers and ratifiers of the Bill of Rights intended to constitutionalize the common law's protection against double jeopardy is unquestioned." *People v Harding*, 443 Mich 693, 724; 506 NW2d 482 (1993) (RILEY, J., concurring in part and dissenting in part).

same in law and in fact").  The *Blockburger* test itself derives directly from *Morey v Commonwealth*, 108 Mass 433, 434 (1871), in which the court stated:

> A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other.  The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense.  A single act may be an offense against two statutes; and *if each statute requires proof of an additional fact which the other does not*, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. [Emphasis supplied.]

The *Morey* analysis was adopted for the purpose of successive prosecutions in *Gavieres v United States*, 220 US 338, 345; 31 S Ct 421; 55 L Ed 489 (1911).  As later articulated in *Blockburger, supra* at 304:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Although Justice William Brennan was a persistent advocate of the same transaction test,[14] the idea that

---

[14] See, e.g., *Werneth v Idaho*, 449 US 1129, 1129-1130; 101 S Ct 951; 67 L Ed 2d 118 (1981) (Brennan, J., dissenting); *Brown v Ohio*, 432 US 161, 170; 97 S Ct 2221; 53 L Ed 2d 187 (1977) (Brennan, J., concurring); *Ashe v*

14

crimes arising from the same criminal episode constitute the same offenses for double jeopardy purposes has been consistently rejected by the United States Supreme Court. *Dixon, supra* at 709 n 14; see also *Carter v McClaughry*, 183 US 367, 394-395; 22 S Ct 181; 46 L Ed 236 (1901) ("[t]he fact that both charges related to and grew out of one transaction made no difference" in determining whether they were the "same offence" under the Fifth Amendment).[15]

---

*Swenson*, 397 US 436, 448-460; 90 S Ct 1189; 25 L Ed 2d 469 (1970) (Brennan, J., concurring). As Justice Brennan explained:

> In my view, the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction. This "same transaction" test of "same offence" not only enforces the ancient prohibition against vexatious multiple prosecutions embodied in the Double Jeopardy Clause, but responds as well to the increasingly widespread recognition that the consolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience. [*Ashe, supra* at 453-454.]

[15] Rejection of the "same transaction" framework for defining the "same offence" was consistent with the English common law and with application of the common law by early American courts. See, e.g., *State v Standifer*, 5 Port 523, 531 (Ala, 1837) ("It is not of unfrequent occurrence, that the same individual, at the same time, and in the same transaction, commits two or more distinct crimes, and an acquittal of one, will not be a bar to punishment for the other").

Instead, the *Morey*/*Blockburger* same-elements analysis was consistently applied by the Court, with two limited exceptions,[16] until the Court in *Grady, supra*, adopted a "same-conduct" rule—a somewhat compromised version of Justice Brennan's "same transaction" test—as an additional step to be performed in addressing successive prosecutions claims. In an opinion authored by Justice William Brennan, the Court held that "the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at 510.[17]

---

[16] See *Grady, supra* at 528-529 (Scalia, J., dissenting). The exceptions apply (1) where a statutory offense expressly incorporates another statutory offense without specifying the latter's elements, see *Harris v Oklahoma*, 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), and (2) where a second prosecution would require litigation of factual issues that were necessarily resolved in the defendant's favor in the first prosecution (i.e., where the prosecution would be barred on *collateral estoppel* grounds), see *Ashe, supra*.

[17] The majority noted that *Blockburger* was a *multiple punishments* case and that the test was formulated as a means of determining legislative intent, while the *successive prosecutions* strand of the double jeopardy provision was intended to protect against the state making repeated attempts to convict an individual. *Grady, supra* at 517-518. To that end, the Court held that the test for successive prosecutions should limit the prosecution's

Justice Scalia dissented, noting that the majority's holding was wholly without historical foundation and that it created a procedural *mandatory joinder rule*:

> [The Double Jeopardy Clause] guarantees only the right not to be twice put in jeopardy for the same offense, and has been interpreted since its inception, as was its common-law antecedent, to permit a prosecution based upon the same acts but for a different crime. . . . In practice, [the majority's holding] will require prosecutors to observe a rule we have explicitly rejected in principle: that *all charges arising out of a single occurrence must be joined in a single indictment.* [Id. at 526-527 (emphasis supplied).][18]

Looking to the text of the Double Jeopardy Clause and its origins in the common law, Justice Scalia opined that the *Blockburger* rule best gave effect to the plain language of the Clause, "which protects individuals from being twice

---

ability to use defendant's conduct against him in more than one prosecution.

[18] As noted by Justice Scalia, the policy interests espoused by the majority might well be served by application of the doctrine of *collateral estoppel*:

> The collateral-estoppel effect attributed to the Double Jeopardy Clause [in *Ashe, supra*] may bar a later prosecution for a separate offense where the Government has lost an earlier prosecution involving the same facts. But this does not establish that the Government "must . . . bring its prosecutions . . . together." It is entirely free to bring them separately, and can win convictions in both. [*Dixon, supra* at 705.]

put in jeopardy 'for the same *offense*,' not for the same *conduct* or *actions*." *Id*. at 529 (emphasis supplied).[19]

The *Grady* same-conduct test was short-lived. In *Dixon*, the Court overruled *Grady* as wrongly decided for the reasons expressed in Justice Scalia's *Grady* dissent and returned to the *Blockburger* formulation of the test for both successive prosecutions and multiple punishments:

> Unlike [the] *Blockburger* analysis, whose definition of what prevents two crimes from being the "same offence," US Const., Amdt. 5, has deep historical roots and has been accepted in numerous precedents of this Court, *Grady* lacks constitutional roots. The "same-conduct" rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy. [*Dixon, supra* at 704.]

### C. Meaning of "Same Offense" in Michigan's Double Jeopardy Provision

#### 1. Pre-1963 Constitutional Law

Initially, it must be noted that the Fifth Amendment was not enforceable against this state until 1969, when the United States Supreme Court declared that its protections extended to the states through the Fourteenth Amendment. *Benton v Maryland*, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707

---

[19] Quoting early dictionaries, Justice Scalia further noted that the term "offense" was commonly understood in 1791 to mean "transgression," i.e., "the violation or breaking of a law." *Grady, supra* at 529. Thus, the Clause did not protect against successive prosecutions for the same *conduct*, but for a violation of the same *law*.

18

(1969). Thus, the people of Michigan were free, at the times that our constitutions of 1835, 1850, 1908, and 1963 were ratified, to implement a double jeopardy protection that was not coterminous with the federal Double Jeopardy Clause. Nevertheless, in 1835 this state adopted a double jeopardy provision that was virtually identical to the Fifth Amendment: "No person for the same offense, shall be twice put in jeopardy of punishment." Const 1835, art 1, § 12.

Until *White* was decided in 1973, this Court defined the scope of our Constitution's double jeopardy protection by reference to the scope of the protection provided by the Fifth Amendment. See, e.g., *People v Bigge*, 297 Mich 58, 64; 297 NW 70 (1941) ("[t]his State is committed to the view upon the subject of former jeopardy adopted by the Federal courts under the Federal Constitution"); *People v Schepps*, 231 Mich 260, 265; 203 NW 882 (1925) ("this court is now committed to the views [regarding Michigan's double jeopardy protection] adopted by the Federal courts under the United States Constitution").[20]

---

[20] Significantly, this Court consistently construed our Double Jeopardy Clause in accordance with federal jurisprudence notwithstanding that our constitutions of 1850, art 6, § 29, and 1908, art 2, § 14, appeared to provide a *narrower* double jeopardy protection than the Fifth Amendment in that the 1850 and 1908 provisions

19

In accordance with the principle that our double jeopardy provision was intended to embody English common-law tenets of former jeopardy, this Court more than one hundred years ago rejected the "same transaction" approach and instead embraced the federal same-elements test as supplying the functional definition of "same offense" under our Constitution's Double Jeopardy Clause. In *People v Parrow*, 80 Mich 567; 45 NW 514 (1890), this Court held that Const 1850, art 6, § 29 did not preclude the defendant's prosecution for larceny of money stolen during an alleged burglary where the defendant had previously been acquitted

---

offered protection against only *retrial*, and then only "after *acquittal upon the merits.*" This Court, acknowledging that our constitutional double jeopardy protection was a creature of the common law, applied the double jeopardy clauses of the constitutions of 1850 and 1908 in the same manner as the Fifth Amendment was traditionally understood to apply. See, e.g., *In re Ascher,* 130 Mich 540, 545; 90 NW 418 (1902) ("while [the language of Const 1850, art 6, § 29] differs from that used in the United States Constitution, the law of jeopardy is doubtless the same under both provisions."); *People v Gault*, 104 Mich 575, 578; 62 NW 724 (1895) (noting that acquittal *or conviction* bars a prosecution for the same offense); *People v Harding*, 53 Mich 481, 484-485; 19 NW 155 (1884) (rejecting the contention that Const 1850, art 6, § 29 protected against retrial only after acquittal "upon the merits").

The narrower language used in our constitutions of 1850 and 1908, and this Court's steadfast adherence to common-law double jeopardy jurisprudence in the face of that restrictive language, are relevant to the reason that this language was changed in our 1963 Constitution. See the discussion at 30-32.

20

of burglary. Citing *Morey, supra*, the *Parrow* Court held that, because the offense of burglary required proof of elements that the offense of larceny did not, neither the defendant's acquittal of burglary nor the prosecution's *failure to charge* the defendant with larceny in the first information barred the subsequent prosecution. *Parrow, supra* at 569-571.

Similarly, in *People v Ochotski*, 115 Mich 601, 610; 73 NW 889 (1898), this Court squarely rejected the notion that offenses arising from the "same transaction" constituted the same offense under Const 1850, art 6, § 29. In *Ochotski*, the defendant allegedly assaulted a husband and a wife. This Court held that the defendant's acquittal in a prosecution for the assault upon the husband did not bar the subsequent prosecution for the assault upon the wife:

> There is a difference between one volition and one transaction.
>
> * * *
>
> In the present case it was not the same blow, even, which caused the injury to the two, but different blows. It was the same transaction, but not the same volition. [*Ochotski, supra* at 610.][21]

---

[21] See also *People v Townsend*, 214 Mich 267, 275-276; 183 NW 177 (1921) (quoting *Morey, supra*, and holding that "[t]he transaction charged may be the same in each case, but if the offenses are different there is no second jeopardy for the same offense"); *People v Cook*, 10 Mich

21

Thus, at the time of the ratification of our 1963 Constitution, it had long been established that (1) our double jeopardy provision in prior constitutions was construed coterminously with the common law and, more specifically, (2) the term "same offense" was defined by application of the federal same-elements test.

It is against this historical backdrop of our double jeopardy jurisprudence that we must determine what the ratifiers of the 1963 Constitution intended when they adopted art 1, § 15.

### 2. *PEOPLE V WHITE* AND PROGENY

This Court's commitment to the same-elements test continued after ratification of our current Constitution. In *People v Grimmett*, 388 Mich 590, 607; 202 NW3d 278 (1972), this Court followed the unbroken line of precedent rejecting the argument that serial prosecutions were not permissible under Michigan's double jeopardy provision where the charges arose from the same transaction:

> Defendant . . . contends that we should prohibit multiple prosecutions arising out of the same factual situation. Defendant properly points out that in some cases multiple prosecutions are prejudicial to a defendant. In some cases multiple prosecutions may aid a

164, 167 (1862) ("[t]he question of a former acquittal as a bar to a new indictment must always depend upon the substantial identity of the offenses charged").

22

> defendant. Therefore, we believe a mandatory rule would be an unwise solution to this problem. Moreover, we believe that the type of rule proposed by the defendant, such as is found in the Model Penal Code, is properly a decision for the Legislature and not for this Court.

However, in *White* the majority overruled *Grimmett* and adopted the same transaction test advocated unsuccessfully by Justice William Brennan—one even more expansive than the defunct compromise *Grady* test.

The defendant in *White* followed the victim to her home in Inkster, forced her to get into his car, drove her to Detroit, and, while in Detroit, raped her. The defendant was first tried and convicted in Wayne Circuit Court on a kidnapping charge. Subsequently, the defendant was tried and convicted in Detroit Recorder's Court on charges of rape and felonious assault.

Citing Justice Brennan's concurring opinion in *Ashe v Swenson*, 397 US 436, 448-460; 90 S Ct 1189; 25 L Ed 2d 469 (1970), the *White* Court adopted the Brennan test and held that the rape and felonious assault convictions were violative of art 1, § 15. We noted that several other states had adopted the same transaction test, either under their own constitutions or under statutes requiring mandatory joinder, and that several commentators had echoed Justice Brennan's concern that the same transaction test was necessary to effectuate the intent of the framers that

the state not be allowed to make repeated attempts to convict a defendant. Without reference to our Constitution, its text, or its ratification process, the *White* Court opined that the same transaction test fostered sound policy:

> The use of the same transaction test in Michigan will promote the best interests of justice and sound judicial administration. In a time of overcrowded criminal dockets, prosecutors and judges should attempt to bring to trial a defendant as expeditiously and economically as possible. A far more basic reason for adopting the same transaction test is to prevent harassment of a defendant. The joining of all charges arising out of the same criminal episode at one trial " * * * will enable a defendant to consider the matter closed and save the costs of redundant litigation." It will also help "* * * to equalize the adversary capabilities of grossly unequal litigants" and prevent prosecutorial sentence shopping. "In doing so, it recognizes that the prohibition of double jeopardy is for the defendant's protection." [*White, supra* at 258-259, quoting 41 Mich App 370, 378; 200 NW2d 326 (1972).]

The *White* Court also noted that the equivalent of the same transaction test had long been the standard applied to civil actions by the court rule governing joinder and by the doctrines of collateral estoppel and res judicata. Finally, the Court concluded that the three crimes committed by the defendant were all part of a single criminal transaction because they "were committed in a continuous time sequence and display[ed] a single intent

24

and goal—sexual intercourse with the complainant." *Id.* at 259.

Justice Thomas E. Brennan vigorously dissented in *White* and criticized the adoption of the same transaction test as contrary to the plain meaning of the term "offense" as used in our Constitution. Justice Brennan further noted that, far from being constitutionally mandated, the same transaction test constituted nothing more than a mandatory joinder rule. *Id*. at 263-265.

In *Crampton v 54-A Dist Judge*, 397 Mich 489, 501-502; 245 NW2d 28 (1976), this Court, recognizing the difficulty of applying the same transaction test, introduced a different inflection on the *White* "single intent and goal" factor where some of the offenses at issue did not involve criminal intent:

> Where criminal intent is required in the offenses involved, the criterion set forth in *White* applies: "continuous time sequence and display [of] a single intent and goal." [390 Mich 259.]

> [However], [w]here one or more of the offenses does not involve criminal intent, the criterion is whether the offenses are part of the same criminal episode, and whether the offenses involve laws intended to prevent the same or similar harm or evil, not a substantially different, or a very different kind of, harm or evil.

Thus, a defendant who was convicted of both driving under the influence of liquor (DUIL), MCL 257.625, and,

25

subsequently, failure to display a valid registration on demand, MCL 257.223—both "non-intent" offenses—was properly tried for both offenses because the applicable statutes were intended to prevent different harms or evils. *Id*. at 503-504.[22]

In recent years, this Court has looked generally to federal double jeopardy jurisprudence in determining whether the successive prosecutions strand of our Double Jeopardy Clause bars a prosecution. See, e.g., *Herron, supra; People v Wilson*, 454 Mich 421, 428; 563 NW2d 44 (1997) (opinion by BRICKLEY, J., noting without elaboration that "[t]he same offense includes prosecution for a greater crime after conviction of [a] lesser included offense"). As Justice Boyle noted in her partially concurring and dissenting opinion in *Wilson*, the approach taken by the

---

[22] To further complicate matters, the Court of Appeals has since put a different, and wholly unfounded, spin on the *White/Crampton* test such that the cases now recite that the *Crampton* "legislative intent" test applies where one of the offenses involved is not a "specific intent crime." See *Flowers, supra; Hunt, supra*. This is certainly not an accurate reflection of *Crampton* (which stated that the rule it announced pertained to *non-intent* crimes), nor is it responsive to the problem that *Crampton* intended to resolve (the application of the "single intent and goal" element of the *White* same transaction test to a defendant who did not necessarily harbor *any intent* at all). The tripartite split among the Court of Appeals judges in the case before us exemplifies the difficulty that inheres in the application of the same transaction test, particularly as that test has been muddled by *Crampton* and the Court of Appeals' "specific intent" jurisprudence.

majority in that case avoided the necessity of deciding whether, as the defendant argued, the test for successive double jeopardy claims differed under the federal and state constitutions, or whether the *Blockburger* test should apply to a claimed violation of art 1, § 15. *Id*. at 444. Because this issue is ripe for consideration in this case, and because we conclude that *White* was wrongly decided, we return to this Court's longstanding practice—commensurate with federal double jeopardy law—of reviewing successive prosecutions claims under the *Blockburger* same-elements test.

### 3. RATIFICATION OF CONST 1963, ART 1, § 15

In our 1963 Constitution the narrower language of the 1850 and 1908 double jeopardy provisions was replaced with language similar to that of the original Constitution of 1835 and the Fifth Amendment: "No person shall be subject for the same offense to be twice put in jeopardy." Art 1, § 15.

It is immediately striking that the plain language of the provision provides no support for the conclusion that the term "same offense" should be interpreted by reference to whether a crime arises out of the "same transaction" as another. Rather, we believe that the plain and obvious meaning of the term "offense" is "crime" or

27

"transgression."[23]   As noted by Justice Scalia in *Grady*, *supra* at 529, the Double Jeopardy Clause "protects individuals from being twice put in jeopardy 'for the same offence,' *not for the same conduct or actions*" (emphasis supplied).[24]

The ultimate inquiry, of course, is the meaning ascribed to the phrase "same offense" by the ratifiers of our 1963 Constitution.  Examination of the record of the Constitutional Convention of 1961 provides the historical context and persuasive support for our decision to return to the original meaning given to the Fifth Amendment-based double jeopardy language in art 1, § 15.

Constitutional Convention Committee Proposal Number 15 recommended that Const 1908, art 2, § 14 be revised to mirror the language of the Fifth Amendment, with the deletion of the "archaic" words "of life and limb."  1 Official Record, Constitutional Convention 1961, pp 464-465, 540.  Delegate Stevens explained that "[t]he Supreme Court of Michigan . . . has virtually held that [Const

---

[23] See, for example, the *American Heritage Dictionary of the English Language*, New College Ed, which defines "offense," in relevant part, as "[a]ny violation or infraction of a moral or social code; a transgression or sin[;] . . . [a] transgression of law; a crime."

[24] "Obviously, the word *transaction* is broader than the word *offense.*"   *White, supra* at 263 (BRENNAN, J., dissenting).

28

1908, art 2, § 14] means the same thing as the provision in the federal constitution, and that is what we have put in . . . ." *Id.* at 539. It was reported that the change was *not substantive* and that the judiciary committee wished simply to bring the text of the double jeopardy provision "in line with the law as it now stands in the state of Michigan" and "in line with the federal constitution." *Id.* at 542, 543. It was further noted that although the Convention of 1908 may have *intended* to restrict the double jeopardy protection to retrial following acquittal on the merits, "the court did not in fact go along with this [intention], and it never has." Therefore, Delegate Stevens explained, the committee "want[ed] to make the constitution read the way the supreme court says it does read." *Id.* at 542, 544.[25] Thus, it is clear that the

---

[25] As noted by Delegate Stevens, it was "difficult to understand why the supreme court has ruled that it means what we are putting in here now." *Id.* at 543. We agree with Delegate Stevens that this Court's pre-1963 constructions of our Double Jeopardy Clause seemed obviously at variance with the terms of the Clause. See n 20. Our holding today is meant to bring our jurisprudence into conformity with the intent expressed by the people in ratifying art 1, § 15—an intent that was wholly overlooked or ignored by this Court in *White*. We are nevertheless compelled to look to the state of the law as it existed in 1963—however *erroneous* it may have been at the time our Constitution was ratified—to determine what, precisely, the people intended in adopting art 1, § 15. Notwithstanding this Court's apparent disregard for the narrow language of the constitutions of 1850 and 1908, the

drafters understood that they were making no change to the state of the law and that they wished merely to amend the Double Jeopardy Clause to conform to the *prior decisions of this Court.*

Of even greater significance to our analysis is the Address to the People, 2 Official Record, Constitutional Convention 1961, p 3355, accompanying Const 1963, art 1, § 15:[26]

> This is a revision of Sec. 14, Article II, of the present constitution. The new language of the first sentence involves *the substitution of the double jeopardy provision from the U.S. Constitution* in place of the present provision which merely prohibits "acquittal on the merits." This is *more consistent with the actual practice of the courts in Michigan*. [2 Official Record, p 3364.]

Thus, the ratifiers were advised that (1) the double jeopardy protection conferred by our 1963 Constitution would parallel that of the federal Constitution, and (2) that the proposal was meant to bring our double jeopardy

---

people in 1963 were free to codify that erroneous case law. The Constitutional Convention discussions make unmistakable the conclusion that our current Double Jeopardy Clause was designed to conform to then-extant judicial decisions.

[26] The Address to the People, widely distributed to the public prior to the ratification vote in order to explain the import of the sundry proposals, "is a valuable tool in determining whether a possible 'common understanding' diverges from the plain meaning of the actual words of our constitution." *Mich United Conservation Clubs, supra* at 378, 379 n 11 (YOUNG, J., concurring).

provision into conformity with what this Court had already determined it to mean.

4.  *WHITE* CONFLICTS WITH ART 1, § 15, AND THUS CANNOT STAND

In 1973, this Court disregarded decades of precedent and, without consideration of the will of the people of this state in ratifying the Double Jeopardy Clause in our 1963 Constitution, adopted Justice William Brennan's long-rejected "same transaction" test.  In adopting this definition and equating the word "transaction" with the constitutional term "offense," the *White* Court accorded to that term a meaning quite at odds with its plain meaning or the common understanding.  In the absence of any evidence that the term "offense" was understood by the people to comprise all criminal acts arising out of a single criminal episode, we are compelled to overrule *White*.[27]

We conclude that in adopting art 1, § 15, the people of this state intended that our double jeopardy provision would be construed consistently with Michigan precedent and the Fifth Amendment.  It has long been understood that our Double Jeopardy Clause derives from the common law and that its meaning must be discerned by reference thereto.  At the

_____

[27]  The dissent notes that the same-elements test "permits multiple prosecutions stemming from a *single incident.*"  *Post* at 5 (emphasis supplied).  The dissent conflates, as did the *White* Court, the terms "offense" and "incident," which certainly do not have identical meanings.

31

time of the ratification of art 1, § 15, in 1963, it was established that the term "same offense" was defined by reference to the same-elements test as set forth by the Massachusetts Supreme Court in *Morey, supra* (and subsequently adopted by the United States Supreme Court). See *People v Townsend*, 214 Mich 267, 275-276; 183 NW 177 (1921); *Parrow, supra*. Moreover, the people were advised in the Address to the People that the proposed double jeopardy provision was conterminous with the Fifth Amendment. In 1963—and thereafter, notwithstanding *Grady*'s short-lived detour—the *Blockburger* same-elements test provided the definition for the term "same offence" in the Fifth Amendment. We agree with Justice Scalia that the same-elements test best gives effect to the plain meaning of that term. We further conclude that the same-elements test best gives effect to the intent of the ratifiers of the 1963 Constitution.[28]

---

[28] As noted by Justice Scalia in *Grady* and by our own Justice Brennan in *White*, principles of collateral estoppel and properly adopted procedural joinder rules might well compel the dismissal of charges in certain circumstances. See, e.g., MCR 6.120. Nevertheless, collateral estoppel and joinder are discrete, nonconstitutional concepts that should not be conflated with the constitutional double jeopardy protection.

This Court has appointed a committee to review the Rules of Criminal Procedure and to determine whether any of these rules should be revised. In light of our decision

32

D.  APPLICATION

Defendant's Oakland County prosecution for possession of stolen firearms, following her conviction for second-degree home invasion in Lapeer County, withstands constitutional scrutiny under the same-elements test. Defendant was convicted of home invasion pursuant to MCL 750.110a(3), which provided:[29]

> A person who breaks and enters a dwelling with intent to commit a felony or a larceny in the dwelling or a person who enters a dwelling without permission with intent to commit a felony or a larceny in the dwelling is guilty of home invasion in the second degree.

Required for a conviction of this offense was proof that defendant (1) entered a dwelling, either by a breaking or without permission, (2) with the intent to commit a felony or a larceny in the dwelling.

---

here today that the constitution does not require the prosecutor to join at one trial all the charges against a defendant arising out of the same transaction, we will be requesting the Committee on the Rules of Criminal Procedure to consider whether our permissive joinder rule, MCR 6.120(A), should be amended to impose mandatory joinder of all the charges against a defendant arising out of the same transaction and to provide this Court with its recommendation within sixty days.  In considering whether a mandatory joinder rule should be adopted, the Committee should consider statutory provisions concerning prosecutorial jurisdiction, including MCL 767.45(1)(c), MCL 767.63, MCL 762.3, MCL 762.8, and MCL 762.10.

[29] MCL 750.110a was subsequently amended by enactment of 1999 PA 44, effective October 1, 1999.

Defendant now stands charged with receiving and concealing a stolen firearm in violation of MCL 750.535b(2), which provides:

> A person who receives, conceals, stores, barters, sells, disposes of, pledges, or accepts as security for a loan a stolen firearm or stolen ammunition, knowing that the firearm or ammunition was stolen, is guilty of a felony, punishable by imprisonment for not more than 10 years or by a fine of not more than $ 5,000.00, or both.

Thus, the Oakland County Prosecutor is required to prove that defendant (1) received, concealed, stored, bartered, sold, disposed of, pledged, or accepted as security for a loan (2) a stolen firearm or stolen ammunition (3) knowing that the firearm or ammunition was stolen.

Clearly, there is no identity of elements between these two offenses. Each offense requires proof of elements that the other does not. Because the two offenses are nowise the same offense under either the Fifth Amendment or art 1, § 15, we affirm the result reached by the Court of Appeals majority and hold that defendant is not entitled to the dismissal of the Oakland County charge.

IV. RESPONSE TO THE DISSENT

We respectfully disagree with the dissent's assertion that our decision to overrule *White* is "grounded in the improper belief that the same-elements test is the sole test used by the United States Supreme Court to protect

34

citizens' constitutional rights under the United States Constitution." *Post* at 2. First and foremost, the critical inquiry in determining the meaning of our constitutional analogue of the federal Double Jeopardy Clause is the intent of the ratifiers in adopting our 1963 Constitution. Thus, the meaning ascribed to a federal constitutional provision by the United States Supreme Court is not dispositive, except to the extent that it appears——as we have explained that it does in the case of Const 1963, art 1, § 15——that the ratifiers of our Constitution *intended* that a provision be construed consistently with the corresponding federal provision.

Moreover, the proposition advanced by the dissent—— that the term "same offence" is accorded different meanings in different contexts——has been squarely rejected by the United States Supreme Court in *Dixon.* We need not refurrow the ground that was so thoroughly plowed by the *Dixon* Court. However, we refer the reader to *Dixon, supra* at 704-709, where the Court emphatically held that "there is no authority, except *Grady*, for the proposition that [the Double Jeopardy Clause] has different meanings [in different contexts]," *id*. at 704, and supported that conclusion with an exhaustive review of federal case law. Indeed, many of the *very cases* that our dissenting

35

colleague cites in support of his assertion that the term "same offence" in the federal Double Jeopardy Clause is susceptible of different meanings, see *post* at 3-4, were addressed point by point by the Court and were soundly rejected as bases for so concluding. See *Dixon, supra* at 705-709.[30]

The dissent further asserts that we have given short shrift to the purpose of the double jeopardy provision's successive prosecutions strand, which is to prevent the state from making repeated attempts to obtain a conviction for an alleged offense. However, the instant case in fact illustrates that this venerable purpose is in no way served by the ill-conceived rule set forth in *White*. Defendant was not subjected to repeated attempts to convict her of "an alleged offense." Rather, she was subjected to

---

[30] Two of the cases cited by the dissent, *Ball v United States*, 470 US 856; 105 S Ct 1668; 84 L Ed 2d 740 (1985), and *Albernaz et al v United States*, 450 US 333; 101 S Ct 1137; 67 L Ed 2d 275 (1981), although not addressed by the *Dixon* majority, are equally inapposite. Indeed, in both cases, the Court reiterated that *Blockburger* had long provided the controlling framework for resolving multiple punishments claims, and in both cases the Court applied the *Blockburger* test. See *Ball, supra* at 861; *Albernaz, supra* at 337. In any event, we are simply not addressing in this case the multiple punishments strand of the double jeopardy protection. See n 11 *supra*. Moreover, it should be noted that the *Albernaz* Court specifically stated that "[i]t is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause." *Id*. at 344 n 3.

prosecution for *two independent offenses* in *two separate jurisdictions*. Application of the *White* rule, rather than ensuring that the state would not get more than "one bite at the apple," would preclude the state from *ever* trying defendant for one of the charges against her. This is not at all consistent with the purpose of the double jeopardy protection.[31]

## V. CONCLUSION

The *White* Court improperly imposed on the text of art 1, § 15 its own notions of prosecutorial policy and, in so doing, conflated the constitutional double jeopardy protection with a self-created procedural mandatory joinder rule. Because it is clear that the ratifiers of our 1963 Constitution intended to continue to accord the same double jeopardy protection under art 1, § 15 that was provided by the Fifth Amendment, we overrule *White* and its progeny as

---

[31] The dissent asserts that our holdings in *Parrow*, *supra*, and *Ochotski, supra*, illustrate the evil that will spring from abrogation of the *White* rule. See *post* at 6-7. Although reasonable minds might differ with respect to whether a prosecutor is morally obligated to join in a single prosecution all offenses arising from a criminal episode (for example, burglary and larceny [*Parrow*], or the murders of two different individuals [*Ochotski*]), this is a matter of policy and is simply not of *constitutional* concern. As we have noted, the *White* Court imported into Michigan's double jeopardy provision a mandatory *joinder* rule that finds no place in either the text of the provision or in its jurisprudential history.

contrary to the will of the people of the state of Michigan. We hold that the *Blockburger* same-elements test, as the reigning test in both this Court and the federal courts in 1963, best gives effect to the will of the people in ratifying art 1, § 15. Because the prosecution was not required to bring against defendant in a single trial all charges arising from the same transaction, and because second-degree home invasion and receiving and concealing stolen firearms are not the same offense under either art 1, § 15 or the Fifth Amendment, we vacate the judgments of the lower courts, affirm the result reached by the Court of Appeals on other grounds, and remand the case to the trial court for further proceedings.

Robert P. Young, Jr.
Maura D. Corrigan
Elizabeth A. Weaver
Clifford W. Taylor
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                   No. 120489

MELISSA ANN NUTT,

    Defendant-Appellant.

_____

**CAVANAGH, J.** *(dissenting).*

Today's majority overrules *People v White*, 390 Mich 245; 212 NW2d 222 (1973), which held that the "same transaction" test should be used to determine if serial prosecutions violate our Constitution's double jeopardy provision.[1] The majority now holds that courts must use the "same elements" test to determine when our Constitution's prohibition against double jeopardy is violated. As was so eloquently stated in *White, supra* at 258, "It is our duty to assure to all who come before us the rights guaranteed under the Constitution of the United States and the

_____

[1] "No person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15.

Constitution of the State of Michigan." Because I believe today's majority fails to honor that duty in its decision to overrule *White*, I must respectfully dissent.

This Court's decision to overrule *White* is grounded in the improper belief that the same elements test is the sole test used by the United States Supreme Court to protect citizens' constitutional rights under the United States Constitution.[2] However, the same elements test, also referred to as the *Blockburger* test,[3] is not as entrenched in federal jurisprudence as the majority claims. "The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." *Brown v Ohio*, 432 US 161, 166 n 6; 97 S Ct 2221; 53 L Ed 2d 187 (1977). "It has long been understood that separate statutory crimes need not be identical—either in constituent elements or in actual proof—in order to be the same within the meaning of the constitutional prohibition." *Id*. at 164.

---

[2] Federal jurisprudence is relevant to our analysis because of the majority's argument that the ratifers of our Constitution wanted Michigan's double jeopardy protection to be parallel with that conferred by the federal constitution.

[3] *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

In numerous cases, the United States Supreme Court has used other tests because it recognized that the same elements test is not an adequate safeguard to protect a citizen's constitutional right against double jeopardy. In *Ashe v Swenson*, 397 US 436, 443-444, 447; 90 S Ct 1189; 25 L Ed 2d 469 (1970), the United States Supreme Court held that the double jeopardy clause includes a collateral estoppel guarantee. In *Ball v United States*, 470 US 856, 857, 865, 866 (appendix); 105 S Ct 1668; 84 L Ed 2d 740 (1985), the United States Supreme Court recognized the *Blockburger* test, see n 3, yet determined a defendant could not be convicted of two offenses that stemmed from the same conduct, even though the offenses had different elements, because it was contrary to congressional intent. As stated in *Albernaz v United States*, 450 US 333, 340; 101 S Ct 1137; 67 L Ed 2d 275 (1981), "The *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent."

Further, in *In re Nielsen*, 131 US 176, 187; 9 S Ct 672; 33 L Ed 118 (1889), a conviction for unlawful cohabitation precluded a subsequent charge of adultery because the incident occurred during the same two and a

half year period as that for unlawful cohabitation.  In *Harris v Oklahoma*, 433 US 682, 682-683; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), the defendant was convicted of felony murder after a store clerk was killed during a robbery.  After the defendant's conviction for felony murder, the defendant was tried and convicted of robbery with firearms.  The United States Supreme Court held that when "conviction of a greater crime . . . cannot be had without conviction of the lesser crime, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one."  *Id*. at 682.  And in *Brown*, *supra* at 166, double jeopardy barred a subsequent prosecution for a greater offense even though the greater offense required proof of an additional element.[4]

The majority relegates the purpose of the Double Jeopardy Clause to a footnote, *ante*, p 11 n 10; however, it

---

[4] The majority states that many of these "*very cases*" were addressed "point by point" in *United States v Dixon*, 509 US 688; 113 S Ct 2849; 125 L Ed 2d 556 (1993).  That is correct; however, cases addressed in *Dixon* were also addressed, and I believe more convincingly, in the *Dixon* dissent.  Further, the majority notes that certain cases I cited addressed multiple punishment claims, and "we are simply not addressing in this case the multiple punishments strand of the double jeopardy protection."  *Ante*, p 36 n 30.  While this case does not deal with a multiple punishment claim, *Blockburger* itself was a multiple punishment case and *Dixon*, *supra* at 704, stated that the term "same offense" means the same whether dealing with successive prosecution or multiple punishment claims.

is worth stating clearly that the purpose of the constitutional protection against double jeopardy is "to limit the state to having generally only one attempt at obtaining a conviction. Otherwise, the state could repeatedly prosecute persons for the same crime, transforming the trial process itself into a punishment and effectively punishing the accused without his having been adjudged guilty of an offense meriting punishment." *People v Dawson*, 431 Mich 234, 250-251; 427 NW2d 886 (1988). Likewise, the United States Supreme Court stated that

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [*Green v United States*, 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957).]

Our Double Jeopardy Clause is meant to protect our citizens from government zeal and overreaching; yet, the same elements test permits multiple prosecutions stemming from a single incident. "The same-elements test is an inadequate safeguard, for it leaves the constitutional guarantee at the mercy of a legislature's decision to modify statutory definitions." *United States v Dixon*, 509 US 688, 735; 113 S Ct 2849; 125 L Ed 2d 556 (1993) (White, J., dissenting). Notably, a technical comparison of the

5

elements is neither constitutionally sound nor easy to apply. While the same elements test appears at first glance to be easy to apply, this Court's recent struggle with whether materiality is an element of perjury in *People v Lively*, 468 Mich 942; 664 NW2d 223 (2003) (order granting leave), provides proof to the contrary. "As with many aspects of statutory construction, determination of what elements constitute a crime often is subject to dispute." *United States v Gaudin*, 515 US 506, 525; 115 S Ct 2310; 132 L Ed 2d 444 (1995) (Rehnquist, C.J., concurring). If our courts struggle with the basics of determining what elements constitute a crime, it is inevitable that these struggles will continue when courts attempt to determine whether two crimes contain the same elements.

In contrast to the same elements test, the same transaction test requires the government to join at one trial all the charges against a defendant arising out of a continuous time sequence, when the offenses shared a single intent and goal. *White*, *supra* at 254. Although a single transaction can give rise to distinct offenses, the charges must be joined at one trial. However, the same transaction test also offers flexibility for certain circumstances, such as when facts necessary to sustain a charge have not yet occurred or have not been discovered despite due

6

diligence. *People v Harding*, 443 Mich 693, 702; 506 NW2d 482 (1993).

The same transaction test best protects Michigan citizens against government harassment and overreaching, while the same elements test increases the potential for government abuse. To this end, the majority has helpfully provided cases that illustrate that the government will expend resources and repeatedly prosecute citizens for crimes that stem from one incident and that could have been consolidated at one trial. In *People v Parrow*, 80 Mich 567, 568; 45 NW 514 (1890), the defendant was acquitted of burglary with intent to commit the crime of larceny and then the government chose to charge the defendant with larceny for stealing the *same money* as in the alleged burglary. And in *People v Ochotski*, 115 Mich 601, 602-603; 73 NW 889 (1898), the defendant was charged and convicted of assaulting a woman after he was acquitted of assaulting her husband during the same incident.

In this case, defendant pleaded guilty of second-degree home invasion, MCL 750.110a(3). She was subsequently charged with receiving and concealing stolen firearms, MCL 750.535b. Notably, defendant was the driver in the home invasion *during which the guns were stolen*. She also admitted that the guns concealed were the ones

stolen during the home invasion. Defendant's actions represent a single intent and goal, as well as the events being part of a continuous time sequence. Almost universally, inherent in stealing an item is receiving it and concealing it, if only for a brief time. Defendant's intent when she participated in the home invasion was to successfully steal the guns. Defendant's intent when she participated in the concealing of the guns was to successfully steal the guns. The subsequent prosecution for receiving and concealing stolen firearms violated defendant's double jeopardy rights.

Government maneuvering and manipulation should not be used to evade the protections granted our citizens by the Double Jeopardy Clause. Protecting our citizens' constitutional rights is a *constitutional* obligation, not merely a moral one. The same transaction test best meets our Constitution's mandate against twice putting a person in jeopardy for the same offense. Without double jeopardy protections, our citizens are at risk of facing multiple prosecutions by the government, regardless of a prior acquittal. "Further, because the state can devote its resources to improving the presentation of its case, the probability of a conviction may increase with each retrial." *Dawson*, *supra* at 251.

Accordingly, I respectfully dissent and would reverse the decision of the Court of Appeals. After pleading guilty of second-degree home invasion, defendant's subsequent prosecution for receiving and concealing stolen firearms violated her double jeopardy rights.

Michael F. Cavanagh
Marilyn Kelly

9