*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

FREDERICK ALLAN MATTHEWS,

      Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 362717
Allegan Circuit Court
LC No. 2022-025034-FH

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

A jury convicted defendant, Frederick Allan Matthews, of second-degree home invasion, MCL 750.110a(3), and malicious destruction of a building in the amount of $1,000 or more but less than $20,000, MCL 750.380(3)(a).[1] The trial court sentenced Matthews as a fourth-offense habitual offender, MCL 769.12, concurrently to 150 to 240 months' imprisonment for the conviction of second-degree home invasion and 24 to 120 months' imprisonment for the conviction of malicious destruction of a building. He now appeals as of right. We affirm.

## I. BACKGROUND

This case arises from a break-in at the log cabin home of David Ashley and Pamela Ashley in Allegan, Michigan. In mid-April 2021, David was at his home while Pamela was at work. Around 11:00 a.m., David left to run errands. He was gone for approximately 80 minutes. When he returned he saw an unfamiliar vehicle parked in the driveway in front of his house. The vehicle

---

[1] The prosecution also charged Matthews with malicious destruction of a building in the amount of $20,000 or more, MCL 750.380(2)(a), and larceny of less than $200, MCL 750.356(5). It later agreed to amend the charge of malicious destruction of a building in the amount of $20,000 or more to malicious destruction of a building in the amount of $1,000 or more but less than $20,000, based on the testimony of David Ashley, one of the victims in this case, that he paid $1,000 related to an insurance claim for repairs to his home resulting from damage to it during the home invasion. The jury found Matthews not guilty of larceny of less than $200.

was unoccupied, running, and its front end faced outward so, as Matthews described, Matthews "didn't have to back out at all." David walked toward the front door of his home and looked in the window next to the front door. Inside, he saw a rocking chair in the house "violently" rocking back and forth. David then saw a person by the side of the house, though he could not tell whether the person was inside or outside the home. The person ran "full speed" at the rear of the house, past a glass sliding door. He then saw the person run from the back of the house, past the garage, and toward the car in the driveway.

David asked Matthews what was going on. Matthews apologized, walked to the running car, and opened the driver's side door. According to David, Matthews was "doing something" in the car, though he could not tell what. David again asked Matthews what was going on. Matthews approached David and indicated he was looking for a car for sale. At that point, Pamela arrived home for lunch and pulled into the driveway. Pamela overheard Matthews tell David that he was looking for a vehicle. She suggested to Matthews that the vehicle he was looking for may be at a garage sale at another cabin down the road. Matthews apologized, walked back to his car, and drove away. David took down the car's license plate as Matthews drove away.

David and Pamela entered their home and discovered that items had been moved in an upstairs bedroom. They also discovered that the window pane on one of the exterior French doors had been kicked in and the door to the upstairs bedroom was damaged. Pamela also later discovered that a $100 Amazon gift card was missing from her office.

Allegan County Sheriff's Detective Christopher Haverdink investigated the break-in at the Ashley home. He started with the license plate number that David provided. The car was registered to Gloria Rodriquez, an elderly woman living in the Wyoming, Michigan area. Gloria, vacationing in Aruba at the time of the break-in, indicated only two people could have been using her vehicle at the time: Dominic Zambrano, Gloria's grandson, and Teresa Rodriquez, Gloria's daughter. Detective Haverdink took steps to investigate both Zambrano and Teresa. After monitoring Teresa's Facebook page, Detective Haverdink saw her post a photo of herself, Zambrano, and Matthews, with whom she appeared to be in a relationship. Detective Haverdink prepared a photo array with Matthews's photo, and David identified Matthews as the person at his home in mid-April 2021.

The police eventually arrested Matthews in June 2021 and the police charged him with home invasion related to the Ashley home. After a preliminary hearing, the trial court bound over Matthews on charges of second-degree home invasion, malicious destruction of a building in the amount of $20,000 or more, and larceny in the amount of less than $200. Matthews moved to quash the bindover on the home-invasion charge, arguing the prosecution had insufficient evidence to establish that he was inside the Ashley home.

Before trial, the prosecution filed a timely notice to present other-acts evidence concerning two other home invasions involving Matthews, one in June 2011 and another in June 2021.[2] In its

---

[2] On appeal, Matthews challenges the admission of evidence related to the June 2021 home invasion only. That is, he does not challenge the admission of evidence related to the 2011 home

notice, the prosecution detailed the circumstances of the June 2021 and described its relevance to this case:

> On or about June 22, 2021, the Victim of a Home Invasion arrived home to see that his house had been broken into. There were pry marks by the door, and damage to the door frames. Multiple items of jewelry were taken, along with handguns. A neighbor's video system caught footage of the suspect vehicle arrive and leave from the Victim's home. On June 23, 2021, the Defendant was arrested in Kent County on active warrants. In his vehicle, which fit the description of the vehicle seen leaving the Victim's home, was property identified as the Victim's. The Defendant is on parole currently, so a search of his home was conducted. During the Parole search items related to the Home Invasion were discovered. This information is contained in Kent County Sheriff s Office report #21-128681 and will be provided to counsel. This information is relevant to show Defendant's identity, motive, lack of mistake, intent, and his common plan or scheme of committing Home Invasions.

Matthews sought to exclude the other-acts evidence, arguing that the prosecution simply "plucked" a few categories from MRE 404(b) without explaining how or why the prior acts should be allowed under individual theories of admissibility. He denied that the prior acts were similar to those in this case and thus urged the trial court to deny the prosecution's request.

The trial court held a hearing to address both Matthews's motion to quash and the prosecution's request to admit other-acts evidence. Regarding the motion to quash, Matthews argued that the prosecution presented insufficient evidence at the preliminary examination to establish probable cause that Matthews was ever inside the Ashley home. The prosecution, however, noted David's testimony that he saw the rocking chair inside the home rocking and saw someone running past the back, sliding door. It also noted that no one else was present on the property other than Matthews, David, and Pamela. The court denied the motion to quash, finding that circumstantial evidence supported the finding that Matthews was at the Ashley house that day and thus concluding that the prosecution presented sufficient evidence to bind over Matthews on the home-invasion charge.

The trial court also granted the prosecution's request to introduce the evidence of the June 2011 and June 2021 home invasions. At the hearing, the prosecution summarized the facts of this case and the others, arguing that evidence of the June 2011 and June 2021 home invasion were "being used for motive, intent, common plan[ or] scheme, absence of mistake, or even the doctrine of chances . . . ." Matthews asked the trial court to reject the prosecution's request, questioning whether the facts of the other home invasions were "specific enough to show motive, opportunity, intent, and the things of that nature" relied on by the prosecution. Regarding the June 2021 home invasion, Matthews noted the only connections to him were surveillance footage depicting a vehicle connected to Matthews and the subsequent discovery of "some items" in Matthews's home and vehicle. Matthews asserted that the unfair prejudice of this evidence would substantially

_____

invasion. We therefore only detail the prosecution's arguments in its notice related to the June 2021 home invasion.

outweigh the probative value, and the jury would improperly use it as propensity evidence. The court found that the evidence was relevant, showed a pattern of behavior demonstrating a scheme or plan of breaking into homes to steal, and was not unfairly prejudicial. It therefore granted the prosecution's request to admit the evidence of the 2011 and 2021 home invasions.

After a two-day trial, the jury found Matthews guilty of second-degree home invasion and malicious destruction of a building in the amount of $1,000 or more but less than $20,000. This appeal followed.

## II. MOTION TO QUASH

Matthews first argues that the trial court erred by denying his motion to quash because there was insufficient evidence to establish that he was ever inside the Ashley home. We disagree.

Generally, we review for an abuse of discretion a trial court's decision on a motion to quash an information. *People v Burkman*, 341 Mich App 734, 748; 992 NW2d 341 (2022). A trial court abuses its discretion when it reaches a decision outside the range of principled outcomes. *Id*. It "necessarily abuses its discretion when it commits an error of law." *Id*. "The bindover decision is reviewed de novo to determine whether the district court abused its discretion without any deference to the circuit court decision." *Id*. "To the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010).

"The primary function of the preliminary examination is to determine whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it." *People v Hunt*, 442 Mich 359, 362; 501 NW2d 151 (1993). To bind over a defendant for trial, "the prosecutor must establish probable cause, which requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt on each element of the crime charged." *People v Yamat*, 475 Mich 49, 52; 714 NW2d 335 (2006) (quotations and citations omitted). See also MCL 766.13. At the preliminary examination, the court must evaluate the weight and competency of the evidence, and the credibility of witnesses. *People v Anderson*, 501 Mich 175, 184; 912 NW2d 503 (2018). The court cannot decline to bind over a defendant because of a conflict of evidence or reasonable doubt as to his or her guilt, as those questions are left for the jury at trial. *Id*. at 185. "Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to support a bindover." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010).

Here, the prosecution charged Matthews with, and the jury convicted him of, second-degree home invasion and malicious destruction of a building in the amount of $1,000 or more but less than $20,000. MCL 750.110a(3) governs second-degree home invasion and provides:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling,

commits a felony, larceny, or assault is guilty of home invasion in the second degree.

In other words, a conviction of second-degree home invasion requires proof that the defendant (1) entered a dwelling, either by a breaking or without permission, and (2) intended to commit a larceny in the dwelling. *People v Nutt*, 469 Mich 565, 593; 677 NW2d 1 (2004). MCL 750.380(1) governs malicious destruction of a building and states that "[a] person shall not willfully and maliciously destroy or injure another person's house, barn, or other building or its appurtenances." Here, the jury convicted Matthews under MCL 750.380(3)(a), which required the destruction or injury to amount to $1,000 or more but less than $20,000.

The trial court did not abuse its discretion denying the motion to quash because the testimony at the preliminary hearing established probable cause to bind over Matthews on both charges. Matthews contends the evidence was insufficient to establish he was inside the Ashley home or intended to commit a larceny inside. But even if David could not say for certain that he saw Matthews in his home (Matthews's main argument), circumstantial evidence supported a reasonable inference that Matthews was inside the Ashley home. See *Corr*, 287 Mich App at 503. Matthews arrived at the Ashley home unannounced during the day while no one was home. He left his car running and parked in a way so he "didn't have to back out," suggesting he wanted to ensure a quick exit. When David arrived home after running errands and saw the vehicle in his driveway, he looked inside his home and saw a rocking chair moving. David and Matthews were the only two people on the property at the time, and the damage to the exterior and interior doors, and the moving of items inside the home, occurred while David was gone for a short time. Matthews's explanation that he was looking for a car also did not explain why David saw him running along the rear and side of the home. The prosecution therefore presented sufficient evidence at the preliminary hearing to establish probable cause that Matthews entered the Ashley home by damaging an exterior door with the intent to steal items inside the home. As a result, the trial court did not abuse its discretion by denying Matthews's motion to quash.

## III. OTHER-ACTS EVIDENCE

Matthews next argues that the trial court erred by allowing other-acts evidence concerning his involvement in a June 2021 home invasion. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

On appeal, Matthews argues that the evidence was inadmissible because it was unfairly prejudicial. He also asserts that the trial court improperly admitted this evidence because facts contained in the 404(b) notice were not presented at trial. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). See also MRE 103(a)(1). In his response to the prosecution's notice of intent to introduce other-acts evidence and at the hearing on the request, Matthews objected to the other-acts evidence because it was unfairly prejudicial. This issue is preserved for appellate review. Matthews failed, however, to object on the ground that facts provided in the notice were not presented at trial. An objection on one ground is generally insufficient to preserve an appellate challenge on a different

ground, so this issue is unpreserved. See *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004).

We review preserved issues related to a trial court's evidentiary rulings for an abuse of discretion. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). But "whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *Id.* "A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law." *Id.* Unpreserved evidentiary issues, however, are reviewed for plain error affecting substantial rights. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). To avoid forfeiture under the plain-error rule, an "error must have occurred," the error must have been "plain, i.e., clear or obvious," and the error must have "affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

## B.  LAW AND ANALYSIS

MRE 404 governs other-acts evidence. MRE 404(b) generally prohibits evidence of other crimes, wrongs, or acts to prove that the defendant has a propensity to commit such acts. *Denson*, 500 Mich at 397. Evidence of other acts may, however, be admissible for other purposes. In that regard, MRE 404(b)(1), at the time the trial court decided this evidentiary issue,[3] provided:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"This rule reflects the fear that a jury will convict a defendant on the basis of his or her allegedly bad character rather than because he or she is guilty beyond a reasonable doubt of the crimes charged." *Denson*, 500 Mich at 397. Still, "other-acts evidence may be admissible for other nonpropensity purposes." *Id.* at 398.

In *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), the Michigan Supreme Court explained the test courts should apply when determining whether to admit other-acts evidence:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the

---

[3] The Michigan Rules of Evidence were recently amended, effective January 1, 2024. What was previously MRE 404(b)(1) is now found in MRE 404(b)(1) and (2). Further citation to the Michigan Rules of Evidence in this opinion will refer to the previous version of the rules in effect at the time of the trial court's decision on the other-acts evidence.

probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

The first prong of the *VanderVliet* test asks "whether the prosecution has articulated a proper noncharacter purpose for admission of the other-acts evidence." *Denson*, 500 Mich at 398; *VanderVliet*, 444 Mich at 55. "The prosecution bears the burden of establishing that purpose." *Denson*, 500 Mich at 398.

The prosecution argued that evidence relating to the June 2021 home invasion was admissible to establish motive, intent, common plan or scheme, and critically, absence of mistake or accident, or the doctrine of chances because Matthews was in possession of stolen property and just leaving a home that had been burglarized. The trial court ruled that the evidence of the June 2021 home invasion was admissible to show a scheme or plan, i.e., Matthews's intent to break into and steal items from unoccupied homes. At trial, Matthews admitted that he was present at the Ashley home, though he claimed he was only there to look at a car for sale and denied going there to burglarize the home. Given Matthews's claim that he was present at the Ashely home for an innocent reason, the prosecution articulated a proper purpose for introducing the other-acts evidence—to show Matthews's intent to break into the Ashley home and rebut the defense theory that he was innocently there to purchase a car. See *VanderVliet*, 444 Mich at 55. See also *Denson*, 500 Mich at 399 (explaining that courts have permitted the admission of other-acts evidence to rebut a defendant's claimed state of mind). Though the trial court only relied on the scheme or plan aspect of MRE 404(b), we note that the evidence of Matthews's participation in the June 2021 home invasion served another proper purpose: to show the absence of mistake or accident. That is, it could be used to show that Matthews's presence on the Ashley property the day of the home invasion was not by mistake or accident as he claimed. We therefore conclude that the prosecution articulated a proper noncharacter purpose for admission of the other-acts evidence at issue. *Denson*, 500 Mich at 398.

Next, the evidence of the June 2021 home invasion was logically relevant. See *VanderVliet*, 444 Mich at 55. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Denson*, 500 Mich at 401. "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action." *Id*. (quotation marks and citation omitted). In other words, the fact to be proven must truly be at issue. *Id*.

As explained, to establish the charge of second-degree home invasion, the prosecution had to show that Matthews broke into the Ashley home with the intent to commit larceny. See *Nutt*, 469 Mich at 593. Matthews's defense was that he was at the property for an innocent reason (looking for a car he saw advertised as for sale) and that he was never inside the Ashley home. But because of the dispute over Matthews's presence at the Ashley home, evidence that he committed a similar home invasion two months later was related to a fact of consequence, i.e., whether he was at the Ashley home for an innocent or nefarious reason. See *Denson*, 500 Mich at 401. Accordingly, we conclude that the evidence of the June 2021 home invasion was logically relevant here.

The other-acts evidence must also be probative. See *Denson*, 500 Mich at 402; *VanderVliet*, 444 Mich at 55. "Evidence is probative if it tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Denson*, 500 Mich at 402, quoting MRE 401. In general, "[t]he threshold is minimal: any tendency is sufficient probative force." *Denson*, 500 Mich at 402 (quotation marks and citation omitted; alteration in original). MRE 404(b), however, "stands as a sentinel at the gate: the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime." *Id*. (quotation marks and citation omitted; emphasis in original). "Thus, although the prosecution might claim a permissible purpose for the evidence under MRE 404(b), the prosecution must also *explain how* the evidence is relevant to that purpose without relying on a propensity inference." *Id*. (emphasis in original). The court must ultimately consider "whether the prosecution has established some intermediate inference, other than the improper inference of character, which in turn is probative" of the case's ultimate issues. *Id*. (quotation marks and citation omitted).

Here, the proffered evidence concerning the June 2021 home invasion was probative of Matthews's intent to break into the Ashley home to steal items inside and that he was at the Ashley property not by mistake or accident but as part of a common scheme or plan to enter unoccupied homes by force. In other words, the other-acts evidence made it more probable than not that Matthews was at the Ashley home for a non-innocent reason, contrary to his claims. See *Denson*, 500 Mich at 402.

The third prong of the *VanderVliet* test requires that the probative value of the other-acts evidence cannot be substantially outweighed by the danger of unfair prejudice. *Denson*, 500 Mich at 398; *VanderVliet*, 444 Mich at 55. This prong requires satisfying MRE 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

All relevant evidence is prejudicial, so "the fear of prejudice does not generally render the evidence inadmissible." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). "It is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*. (emphasis in original). "[P]rejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury." *Id*. (quotation marks and citation omitted).

Here, the danger of unfair prejudice did not substantially outweigh the probative value of the evidence of Matthews's involvement in the June 2021 home invasion. As discussed, the evidence relating to the June 2021 home invasion was probative of Matthews's intent, of his common scheme or plan, and of the fact that his presence at the Ashley home was not the result of an innocent mistake. The trial court acknowledged that this evidence would be prejudicial, but it noted that the question was whether it was *unfairly* prejudicial. It found that the evidence of the June 2021 home invasion showed Matthews's common scheme and plan and was not unfairly prejudicial. We conclude this was not an unreasonable or unprincipled decision. And any danger of prejudice was allayed by the trial court's instruction regarding the other-acts evidence. See *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002) ("[A] limiting instruction such as this one that cautions the jury not to infer that a defendant had a bad character and acted in

-8-

accordance with that character can protect the defendant's right to a fair trial."). See also *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011) ("Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors."). Accordingly, the trial court did not abuse its discretion by admitting evidence of the June 2021 home invasion. See *Denson*, 500 Mich at 396.

Matthews also argues that the trial court erred by admitting evidence relating to the June 2021 home invasion because the notice contained facts not presented at trial. Recounting the circumstances of the June 2021 home invasion, the notice stated that handguns had been stolen and that a neighbor's video surveillance system caught the suspect vehicle arriving and leaving the scene. The testimony at trial, however, indicated that a pistol magazine had been stolen—there was no mention of any missing handguns. The testimony also did not address any surveillance video or a suspect vehicle. But MRE 404(b)(2) requires the prosecution to provide "the *general* nature of any such evidence it intends to introduce at trial . . . ." (Emphasis added.) The notice here satisfied that requirement because it provided the "general nature" of the other-acts evidence to be presented at trial. That some of the evidence mentioned in the notice either did not make it into evidence at trial or differed slightly from that offered at trial does not mean the trial court erred by admitting the evidence related to the June 2021 home invasion. The prosecution provided the general nature of the evidence it intended to offer at trial and the trial court did not abuse its discretion in admitting the other-acts evidence. As a result, Matthews has not shown that the presentation of testimony at trial that slightly differed from the testimony described in the notice amounted to plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## IV. PROSECUTORIAL MISCONDUCT

Matthews also argues that the prosecutor made improper references to the June 2021 home invasion because the inference regarding his involvement in that crime was purely speculative. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"In cases alleging prosecutorial misconduct, issues are preserved by contemporaneous objections and requests for curative instructions." *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020) (cleaned up). Matthews did not object to any statement made by the prosecution during its opening statement or closing argument, and did not request a curative instruction, so this issue is unpreserved, a point which Matthews concedes. We generally review de novo claims of prosecutorial misconduct. *People v Fyda*, 288 Mich App 446, 460; 793 NW2d 712 (2010). But because Matthews's prosecutorial-misconduct claim is unpreserved, we review it for plain error affecting substantial rights. See *id*. at 460-461.

## B. LAW AND ANALYSIS

We review claims of prosecutorial misconduct on a case-by-case basis and examine the remarks in context to determine if the defendant received a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 201, 235; 749 NW2d 272 (2008)

(citations omitted). "No error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *Watson*, 245 Mich App at 586 (quotation marks and citation omitted).

"The prosecutor's job isn't just to win, but to win fairly, staying well within the rules." *Evans*, 335 Mich App at 89 (quotation marks and citation omitted). But "[a] prosecutor is afforded great latitude regarding his or her arguments and conduct at trial." *Fyda*, 288 Mich App at 461. A prosecutor is thus generally "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236.

Matthews takes issue with several of the prosecutor's statements related to the June 2021 home invasion. He references statements in the prosecutor's opening statement indicating that the jury would "hear about two other cases involving Mr. Matthews to prove that" his presence at the Ashley home in April 2021 was not a mistake and part of his plan and scheme. Matthews also contends the prosecutor was allowed in his opening statement to claim that Matthews was responsible for June 2021 home invasion. And Matthews challenges statements in the prosecutor's closing argument that, he claims, were arguments that Matthews did in fact commit the June 2021 home invasion.

The prosecutor's comments were not improper. First, the prosecutor essentially summarized the trial testimony. Kent County Sheriff's Deputies Logan Copeyon and Melissa Mailloux testified that they responded to a home invasion in June 2021 in which the door had been pried open and items in the master bedroom had been dumped out and scattered. Kent County Sheriff's Detectives Christopher Goehring and Michael Levand testified that they arrested Matthews the day after the June 2021 home invasion, and, in searching him after the arrest, they found items missing from the home related to the June 2021 home invasion. A subsequent search of Matthews's home revealed an additional item that had also been taken from that home. Second, the prosecutor's inference that Matthews committed the June 2021 home invasion was reasonable considering the evidence. That is, a person possessing items missing from a recently-burglarized home may logically have been involved in the burglary. See *Unger*, 278 Mich App at 236. Third, in addition to the other-acts evidence instruction, the trial court also instructed the jury that statements and argument by the lawyers were not evidence. The court's instructions therefore cured the potential prejudicial effect of any inappropriate statements made by the prosecutor. See *id*. at 235.

Finally, to the extent that the prosecutor mentioned video evidence of the car that was not subsequently developed during trial, the statement was brief and did not affect the outcome of Matthews's trial in light of the testimony offered at trial. See *Unger*, 278 Mich App at 239 (stating that a "factually erroneous argument" by the prosecutor did not warrant reversal because the inaccurate remark was "isolated, brief, and did not affect the outcome of [the] defendant's trial."). For instance, Detectives Goehring and Levand testified that there was testimony that when Matthews was arrested the following day, he was in possession of items missing from the home involved in the June 2021 home invasion. Accordingly, Matthews has not shown that the prosecutor's comments during opening statements or closing arguments amounted to plain error affecting his substantial rights. See *Fyda*, 288 Mich App at 460. As a result, he is not entitled to relief.

## V. SUFFICIENCY OF THE EVIDENCE

Matthews next argues that the evidence presented at trial was insufficient to support his convictions for home invasion and malicious destruction of property. We disagree.

We review de novo a claim regarding the sufficiency of the evidence. *People v Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). In doing so, we review "the evidence in the light most favorable to the prosecution, and consider[] whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). This standard is deferential, meaning we must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id.* (quotation marks and citation omitted). And the scope of this review "is the same whether the evidence is direct or circumstantial"; "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id.* (quotation marks and citation omitted). It is not for us but rather the trier of fact "to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id.* (quotation marks and citation omitted).

Viewing the evidence in the light most favorable to the prosecution, sufficient evidence supported a finding that Matthews broke into the Ashley home intending to commit a larceny. See *Nutt*, 469 Mich at 593. Although the exact time Matthews arrived at the Ashley home is unknown, David testified to being gone for 80 minutes. David saw only Matthews near his home at the relevant time; there was no evidence that anyone else was present. Matthews himself never claimed anyone else was present at the home (other than David and Pamela). Though Matthews claimed to be looking for a car in the garage, David denied seeing Matthews at the garage (other than seeing him run between the house and the garage as he tried to return to his vehicle from behind the Ashley house). The jury could reasonably infer that David interrupted Matthews while Matthews was searching for items to steal within the home. It could also infer that when Matthews noticed David had returned, Matthews ran from the house and made up an excuse to explain his presence. And although Matthews denied ever being in the house or running when David returned, the jury is tasked with determining the weight and credibility of the testimony offered at trial. See *Bennett*, 290 Mich App at 472.

There was also sufficient evidence from which the jury could infer that Matthews intended to steal from the Ashley home. The evidence showed that when David went inside the house, he saw the door to Pamela's office was open and the light was on; the door had been closed and the light off before David left the home earlier in the day. Pamela also noticed that a bedroom door was open that was normally closed and locked because she kept antiques in the room and did not want her grandchildren to break anything. She testified that when she went inside the bedroom, she saw a stepladder that was usually in the closet sitting on the table. David denied having moved the stepladder. And she saw a box that was normally kept in the closet sitting on the floor outside the closet. Pamela also saw that a safe she kept in the closet was open, despite normally being closed. Keys and "papers that came with the safe" normally kept inside the safe were on the floor outside of it. The jury could therefore reasonably infer from the evidence that Matthews—as the only person on the property other than the homeowners at the time—was the individual who had broken into the home, moved items around inside, and opened a safe intending to take anything of

-11-

value he could find. The prosecution therefore presented sufficient evidence to support Matthews's conviction for second-degree home invasion.

In addition, David's testimony sufficiently supported Matthews's conviction of malicious destruction of a building in the amount of $1,000 or more but less than $20,000. See MCL 750.380(3)(a). David testified that he paid $1,000 for his insurance deductible toward the repairs to his home stemming from the home invasion. This included the damage to the French door and an upstairs bedroom door. Viewing the evidence in the light most favorable to the prosecution, we therefore conclude that the prosecution presented sufficient evidence to support Matthews's convictions for second-degree home invasion and malicious destruction of a building in the amount of $1,000 or more but less than $20,000.

## VI. EFFECTIVE ASSISTANCE OF COUNSEL

Finally, Matthews argues that his trial counsel rendered ineffective assistance of counsel because he failed to object to improper rebuttal evidence. We disagree. Matthews has not established that trial counsel was deficient, let alone an outcome-determinative deficiency.

Matthews did not move for a new trial or an evidentiary hearing on the basis that he was denied the effective assistance of counsel, so this issue is unpreserved. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). We review unpreserved evidentiary claims for plain error affecting substantial rights. *Chelmicki*, 305 Mich App at 62. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review a trial court's factual findings for clear error and "its constitutional determinations . . . de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). Clear error exists when we are definitely and firmly convinced the trial court made a mistake. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). Because this issue is unpreserved, our review is limited to errors apparent on the record. *Sabin (On Second Remand)*, 242 Mich App at 659.

> In order to establish the right to a new trial premised on ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020).]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted). "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Sabin (On Second Remand)*, 242 Mich App at 659.

Here, the claim of ineffective assistance relates to trial counsel's decision not to object to the prosecution's rebuttal evidence. "Rebuttal evidence is admissible to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996) (quotation marks and

citations omitted). "The question whether rebuttal is proper depends on what proofs the defendant introduced and not on merely what the defendant testified about on cross-examination." *Id.* "[T]he test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather, whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant." *Id.*

At trial, Matthews admitted to being at the Ashley home on the date in question, asserting, however, that he mistakenly went to the wrong house while looking for a car that was for sale. After Matthews's testimony, the prosecution offered rebuttal testimony from Detective Haverdink. Detective Haverdink testified that during his interview with Matthews in June 2021, Matthews could not recall going to a log cabin, breaking into a log cabin, or being in Allegan on the date in question. Matthews also acknowledged during the interview that he was aware that police had spoken to Zambrano about the home invasion and indicated that his mother-in-law (Gloria) would never allow Matthews to use her car.

The prosecution presented Detective Haverdink's testimony to contradict Matthews's claim that he was at the Ashley property for an innocent reason. If Matthews was at the Ashley home because he got lost while looking for a car for sale, he had no reason to deny driving his mother-in-law's vehicle or being in Allegan on the day in question. He also knew that his stepson was a suspect in a home invasion and declined to come forward to explain the situation. Detective Haverdink's testimony was proper because it tended to contradict Matthews's evidence that he was at the Ashley home with the intent to look at and possibly purchase a car. See *Figgures*, 451 Mich at 399. Matthews therefore has not shown that the admission of this evidence amounted to plain error affecting his substantial rights. See *Chelmicki*, 305 Mich App at 62.

Matthews has failed to establish that defense counsel was deficient for failing to object to the rebuttal testimony for two reasons. First, because Detective Haverdink's testimony was proper, defense counsel could not have been ineffective for failing to object to its admission. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) ("Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion."). Second, even if defense counsel's performance was deficient, it did not affect the outcome of the proceedings because the prosecution presented sufficient evidence supporting Matthews's convictions. As described, David testified that he saw a rocking chair inside his home moving violently back and forth, and, a short time later, saw Matthews running along the side and rear of the house. Matthews then appeared, went to his car, did something in it, and approached David. After Matthews left, David and Pamela noticed damage to exterior and interior doors and that items inside the house had been moved. The prosecution also presented evidence that Matthews was involved in two other home invasions, both of which occurred during the day while the homeowners were away. As a result, sufficient evidence supported Matthews's guilt even without the rebuttal testimony. Matthews has accordingly not shown that trial counsel's conduct, even if deficient, prejudiced him at trial. Matthews therefore failed to establish that trial counsel rendered ineffective assistance. See *Abcumby-Blair*, 335 Mich App at 228.

We affirm.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood