*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 24, 2021

Plaintiff-Appellee,

v

No. 352402
Macomb Circuit Court
LC No. 2019-000050-FC

MARCEL DEVON BOST,

Defendant-Appellant.

Before: GLEICHER, P.J., and CAVANAGH and LETICA, JJ.

PER CURIAM.

A jury convicted Marcel Devon Bost of second-degree murder, involuntary manslaughter, and reckless driving causing death for striking Emerita Albao's vehicle and killing her during a high-speed chase with police. Bost complains that involuntary manslaughter and reckless driving causing death are lesser included offenses of second-degree murder and therefore his convictions for those offenses violate double jeopardy principles. Although involuntary manslaughter is a lesser included offense of second-degree murder, the trial court remedied the constitutional error by vacating Bost's involuntary manslaughter conviction. Bost also raises a meritless challenge to the sufficiency of the evidence supporting his second-degree murder conviction. We affirm.

## I. BACKGROUND

At approximately 10:00 a.m. on November 24, 2018, Warren Police Sergeant Charles Rushton was on patrol when he observed a white Pontiac Grand Prix roll through a red light on Mound Road. Sergeant Rushton attempted to initiate a traffic stop, but the Grand Prix sped off northbound. Sergeant Rushton pursued the Grand Prix for several miles as the car reached speeds up to 100 miles per hour. The Grand Prix sped through six red lights. Adding to the danger, the roadway was wet from a "mist" that was falling that day.

At the intersection of Mound and 12 Mile Roads, while travelling approximately 15 to 20 miles per hour, the Grand Prix clipped the back end of a minivan. The minivan "skidded and sort of fishtailed a little bit," but the driver was able to safely maneuver to a parking lot.

-1-

At the intersection of Mound and 13 Mile Roads, the fleeing Grand Prix "broadside[d]" a small Kia sedan. The Grand Prix was travelling at approximately 77 miles an hour at the time of the collision. The driver of the Grand Prix jumped out of the car and fled on foot. Sergeant Rushton pursued the driver. The driver, later identified as Marcel Devon Bost, was captured at the nearby General Motors Tech Center.

When Bost struck the Kia, the Kia spun into the median and crashed into a pole. A witness described that "the car that got hit was basically V-shaped." Another driver stopped to provide aid and discovered the driver of the Kia, Emerita Albao, slumped over the steering wheel. Albao was transported by ambulance to the hospital where she died three days later. An autopsy revealed bruising to several parts of her body. Albao suffered a broken bone in the left pelvic region that caused a hemorrhage. She also had bruising and swelling of the brain. The forensic pathologist declared that Albao's cause of death was blunt force head trauma caused by the collision.

An accident reconstructionist estimated that Bost was travelling at approximately 77 miles an hour when he struck the Kia. There were no marks on the road consistent with braking. Witnesses asserted that they did not hear the squeal of brakes. And Sergeant Rushton did not observe any brake lights as Bost entered the intersection.

The jury convicted Bost of reckless driving causing death, "homicide—involuntary manslaughter," and second-degree murder. The trial court subsequently dismissed Bost's involuntary manslaughter conviction as violative of double jeopardy.

## II. JURY INSTRUCTIONS/DOUBLE JEOPARDY

Bost contends that reckless driving causing death and involuntary manslaughter are both lesser included offenses of second-degree murder. The trial court violated his right to be free from double jeopardy, Bost asserts, by instructing the jury that the counts against him were three separate counts, rather than a primary charge with two alternative lesser offenses. The court also "confused" the jury, Bost urges, by first telling the jury that involuntary manslaughter was a lesser included offense of second-degree murder and then changing the rules.

### A

How the jury should be instructed was hotly contested in the trial court. The first point of dispute centered on the correct characterization of the "homicide – involuntary manslaughter" charge. The prosecution initially charged Bost with "homicide manslaughter with a motor vehicle." The parties and court agreed that the statute specifically defining that charge had been repealed. The charged offense was reframed as involuntary manslaughter.

As originally charged, the parties both argued that homicide manslaughter with a motor vehicle was not a lesser included offense of second-degree murder. The court had to convince the parties that the particular charge of involuntary manslaughter was a lesser included offense despite that it was committed with a motor vehicle. Even then, the prosecutor contended that "it would be prudent to proceed now on all charges, then if the defendant is convicted of all offenses at trial by the jury, they could always be vacated by a motion." On the second day of trial, the parties and the court agreed that the jury would be instructed that involuntary manslaughter was a lesser,

alternative count to second-degree murder. And the court so instructed the jury before trial: "You may also consider the lesser crime of involuntary manslaughter."

On the third day of trial, however, the court reconsidered its position, stating that although involuntary manslaughter is a lesser included offense of second-degree murder, the court was no longer "sure that" it "is necessarily required" to present the charges in that fashion to the jury. Defense counsel had previously argued "that second-degree murder was an inappropriate charge." The court expressed concern that if second-degree murder and involuntary manslaughter were presented as alternative charges and the jury convicted Bost of the greater charge, this Court might later agree with the defense on its second-degree murder challenge, triggering the need for a retrial. The court allowed the parties time to consider their preferences on how to proceed. By the end of the day's testimony, both the prosecution and defense agreed to listing the charges as separate offenses that could be considered by the jury, instead of instructing the jury that involuntary manslaughter is a lesser offense of second-degree murder.

Ultimately, the court instructed the jury as agreed by the parties in an inconsistent manner. When describing the elements of second-degree murder, the court included "that the killing was not done under circumstances that reduce it to a lesser crime." The court continued, "You may also consider the lesser crime of involuntary manslaughter." But the court then advised the jury:

> The defendant is charged with multiple counts, that is, with the crimes of murder second degree, involuntary manslaughter, reckless driving causing death . . . . These are separate crimes and the prosecutor is charging that the defendant committed all of them. You must consider each crime separately in light of all the evidence in the case . . . . You may find the defendant guilty of all, any one, or any combination of these crimes, or not guilty.

B

We review de novo questions of law involving jury instructions, but review for an abuse of discretion the trial court's determination whether a jury instruction is applicable to the facts of the case. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

> We review jury instructions in their entirety to determine if error requiring reversal occurred. The instructions must not be extracted piecemeal to establish error. Even if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights. [*People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001) (quotation marks and citations omitted).]

Generally, we review de novo questions of law, including whether an offense constitutes a lesser included offense. *People v Heft*, 299 Mich App 69, 73; 829 NW2d 266 (2012). We also review de novo constitutional double jeopardy challenges. *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008). However, Bost approved of the trial court's involuntary manslaughter instruction and claimed for the first time on appeal that reckless driving causing death is also a lesser included offense. We review for plain error unpreserved constitutional challenges. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain,

forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (quotation marks and citations omitted).

The Michigan Constitution and the Fifth Amendment of the United States Constitution protect a criminal defendant from being "subject for the same offence to be twice put in jeopardy . . . ." US Const, Am V; see also Const 1963, art 1, § 15. The prohibition against double jeopardy provides three protections: "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Nutt*, 469 Mich 565, 574-575; 677 NW2d 1 (2004). This case involves the third protection—to be free from multiple punishments for the same offense.

> The multiple punishments strand of double jeopardy is designed to ensure that courts confine their sentences to the limits established by the Legislature and therefore acts as a restraint on the prosecutor and the Courts. The multiple punishments strand is not violated where a legislature specifically authorizes cumulative punishment under two statutes. Conversely, where the Legislature expresses a clear intention in the plain language of a statute to prohibit multiple punishments, it will be a violation of the multiple punishments strand for a trial court to cumulatively punish a defendant for both offenses in a single trial. Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed.

> The Legislature, however, does not always clearly indicate its intent with regard to the permissibility of multiple punishments. When legislative intent is not clear, Michigan courts apply the "abstract legal elements" test articulated in *Ream* to ascertain whether the Legislature intended to classify two offenses as the "same offense" for double jeopardy purposes. This test focuses on the statutory elements of the offense to determine whether the Legislature intended for multiple punishments. Under the abstract legal elements test, it is not a violation of double jeopardy to convict a defendant of multiple offenses if each of the offenses for which defendant was convicted has an element that the other does not. This means that, under the *Ream* test, two offenses will only be considered the "same offense" where it is impossible to commit the greater offense without also committing the lesser offense. [*People v Miller*, 498 Mich 13, 17-19; 869 NW2d 204 (2015) (cleaned up).]

C

First, we reject Bost's contention that reckless driving causing death is a lesser included offense of second-degree murder.

To convict a defendant of second-degree murder, the prosecution must establish the following elements: "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for

-4-

causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). Reckless driving causing death is established with evidence that the defendant (1) "operate[d] a vehicle upon a highway or a frozen public lake, stream, or pond or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles," (2) "in willful or wanton disregard for the safety of persons or property," and (3) "by the operation of that vehicle cause[d] the death of another person . . . ." MCL 257.626(2), (4).

It is entirely possible to commit the greater offense of second-degree murder without committing the lesser offense of reckless driving causing death. Second-degree murder does not require driving a vehicle in a public space or using a motor vehicle as the instrument of the killing. The abstract elements test is not satisfied and therefore no double jeopardy violation occurred.

We agree with Bost that the jury instructions were not ideal as the trial court first advised the jurors that involuntary manslaughter was a lesser offense to second-degree murder, but then instructed the jurors that second-degree murder and involuntary manslaughter were separate offenses and the jury could convict Bost of both, either separately, or neither. The harm that resulted was that Bost was convicted of both second-degree murder and involuntary manslaughter after the court and the parties agreed that this would amount to a double jeopardy violation. However, the remedy for such a violation is to affirm the conviction for the greater offense and vacate the conviction for the lesser. See *People v Herron*, 464 Mich 593, 609; 628 NW2d 528 (2001). The trial court already granted that relief. There is no further relief that this Court can provide.

## III. SUFFICIENCY OF THE EVIDENCE

Bost further contends that the prosecution presented insufficient evidence to support his second-degree murder conviction. Specifically, Bost notes a lack of evidence that he acted with malice. We review de novo a challenge to the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution to determine whether a rational fact-finder could find the elements of the offense proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted).

"Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). "[T]he mens rea for second-degree murder does not mandate a finding of specific intent to harm or kill. The intent to do an act in obvious disregard of life-endangering consequences is a malicious intent." *Id*. at 466 (citation omitted).

The evidence established that Bost fled from a police officer who was trying to effectuate a simple traffic stop for a minor moving violation. Bost led the officer on a chase at speeds up to 100 miles an hour. He flew through six red lights. At one busy intersection, Bost slowed but struck a minivan. After that collision, Bost continued to speed down the wet roadway, ignoring red lights. Albao was not as lucky as the occupants of the minivan. Bost drove through that

intersection at almost 80 miles an hour, striking her small sedan and sending it flying into a pole in the median.

Any driver would realize the danger he was creating by speeding along a wet, busy roadway, running red lights at major intersections. And Bost was even more aware of the potential consequences of his actions as he had already caused one accident and yet continued his flight. This evidence more than sufficed to prove that Bost acted in "wanton and wilful disregard of the likelihood that the natural tendency of [his] behavior [was] to cause death or great bodily harm." *Goecke*, 457 Mich at 464.

The facts of this case are remarkably similar to those in *Goecke*, in which the Supreme Court affirmed the defendant's bind-over for trial on a second-degree murder charge. In that case,

> The defendant evaded the police while drinking alcohol in a liquor store parking lot, permitting the inference that the defendant was aware that his level of intoxication was too great to have been driving at 8:30 p.m.; that, despite such awareness, defendant drove recklessly at high speeds along a main artery in the city of Pontiac after having consumed a significant amount of alcohol; and that the defendant was aware of the extent of his impairment and lack of control after having narrowly missed hitting another vehicle, yet still continued to speed through at least one red traffic light before colliding with the victim's car. Taken together, the evidence supported findings that the defendant was drunk and speeding in the middle of a city, that his lack of self-control caused him to narrowly miss striking a vehicle, and that he thereafter ran through a stoplight, struck another vehicle, and killed its occupant. [*Id*. at 470.]

Like the defendant in *Goecke*, Bost was well aware that his high-speed chase down Mound Road in the middle of the day was likely to end badly, especially as he caused one minor collision before the fatal finale. The jury's verdict was more than supported.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh