*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LEWIS JUNIOR SMITH,

        Defendant-Appellant.

UNPUBLISHED
April 15, 2026
1:34 PM

No. 369597
Washtenaw Circuit Court
LC No. 22-000023-FC

Before: TREBILCOCK, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his convictions for first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(g), and third degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to serve concurrent sentences of 336 to 558 months' imprisonment for the CSC-I conviction and 108 to 360 months' imprisonment for the CSC-III conviction.[1] We affirm defendant's CSC-I conviction and sentence, but we vacate defendant's conviction and sentence for CSC-III and remand for the trial court to correct his judgment of sentence accordingly.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

TR testified that she was raped by defendant in his home. She stated that she had called her drug dealer from jail to ask for a ride home, but he was unavailable and sent his cousin, defendant. Defendant and his sister arrived to pick TR up, and TR then asked defendant for "dope." TR explained that defendant gave her a substance, which she injected. But the substance did not have the same effect on her body as she expected from heroin. Instead, it caused her to start "blacking out in and out" of consciousness. TR testified that defendant and his sister carried her into defendant's home from the car. The next thing she remembered was waking up with defendant's penis inside her vagina while defendant held his arm or hand to her throat. TR testified

---

[1] The trial court later amended defendant's judgment of sentence for the CSC-III conviction to 300 to 360 months.

that she told defendant to get off her, and he did, but that he had already ejaculated by that time. TR reached for her phone while defendant dressed himself, and she began recording her interaction with defendant. In the recording, she can be heard asking what she had taken, and defendant replied that she had taken sleeping pills. Defendant and TR argued for a while, and TR repeatedly expressed that she did not want to have sex with defendant and that she wanted to leave.

TR was eventually able to exit defendant's home. She ran to a neighbor for help, who took her inside and called the police. The police transported her to the hospital, where a nurse performed a forensic medical exam with a rape kit. The nurse identified injuries to TR's neck, thighs, lower back, buttocks, lips, and cervix. The nurse collected internal and external swab samples from TR and her clothes, and she submitted them to the police for testing. The test results indicated the likely presence of defendant's DNA. After further investigation, defendant was arrested on CSC charges.

During defendant's trial, Washtenaw County Sheriff's Deputy Thomas Guynes testified that he came into contact with TR following a 911 call reporting an assault. He described her appearance on the scene as disheveled and recalled that she had visible injuries on her body and face. When the prosecution asked Deputy Guynes what TR said to him about the assault on the scene, defense counsel objected on grounds of hearsay. The prosecutor sought to admit the statement as an excited utterance, and defense counsel countered that the prosecutor had not established a timeline of when Deputy Guynes had spoken to TR. The trial court granted defense counsel's request for voir dire.

During the voir dire, Deputy Guynes testified that he arrived on scene and located TR. However, Deputy Guynes explained that TR did not indicate the time that the assault had taken place, and he did not know how long she had been waiting for the police to arrive. The prosecutor objected to defense counsel's questioning, arguing that it did not pertain to whether the hearsay statement qualified as an excited utterance. The trial court observed that the pertinent issue for purposes of the excited-utterance exception was whether the declarant was under stress from the event. Defense counsel countered that establishing a timeline was necessary to consider TR's opportunity to fabricate her statement to Deputy Guynes. Ultimately, the prosecutor proceeded with her direct examination of Deputy Guynes. Deputy Guynes testified that TR was upset, disheveled, and crying during his initial conversation with her. He explained that, despite her emotional state, TR informed him that she had been assaulted by defendant and successfully directed officers to defendant's home.

After hearing all the evidence, the jury found defendant guilty of CSC-I and CSC-III, and the trial court sentenced defendant as previously described. This appeal followed.

## II. DOUBLE JEOPARDY

Defendant argues that the trial court violated his constitutional protection against double jeopardy when it convicted and sentenced him for both CSC-I and CSC-III on the basis of the same underlying sexual penetration. We agree.

## A.  STANDARD OF REVIEW

We review a defendant's unpreserved double-jeopardy claim for plain error affecting the defendant's substantial rights.  *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008).  Under this standard of review, "three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.  The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted).  "Reversal is appropriate only if the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings."  *McGee*, 280 Mich App at 682.

## B.  THE *BLOCKBURGER* TEST

Both "[t]he United States and Michigan Constitutions protect a person from being twice placed in jeopardy for the same offense."  *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004).  See also US Const, Am V; Const 1963, art 1, § 15.  The prohibition against double jeopardy protects against "multiple punishments for the same offense."  *Nutt*, 469 Mich at 574.  Under both the state and federal constitutions, the *Blockburger*[2] test determines whether multiple punishments are barred by constitutional protection against double jeopardy.  *People v Smith*, 478 Mich 292, 315; 733 NW2d 351 (2007).  When "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932)..  "If each [statute] requires proof of a fact that the other does not, the *Blockburger* test is satisfied . . . ."  *Iannelli v United States*, 420 US 770, 785 n 17; 95 S Ct 1284; 43 L Ed 2d 616 (1975).

"As is invariably true of a greater and lesser included offense, the lesser offense . . . requires no proof beyond that which is required for conviction of the greater [offense]."  *Brown v Ohio*, 432 US 161, 168; 97 S Ct 2221; 53 L Ed 2d 187 (1977).  Therefore, constitutional protections forbid "successive prosecution and cumulative punishment for a greater and lesser included offense."  *Id*. at 169.

The statutory elements of CSC-I are outlined in MCL 750.520b(1)(g), which provides, in relevant part, as follows:

> (1) A person is guilty of sexual criminal conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

> \* \* \*

---

[2] *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

(g) The actor causes personal injury to the victim, and the actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

Comparatively, MCL 750.520d(1)(c) states the relevant elements of CSC-III:

(1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:

\* \* \*

(c) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

Because the Legislature intended to punish each act of criminal sexual penetration separately, a trial court may convict a defendant of both CSC-I and CSC-III if it determines that multiple sexual penetrations occurred involving a single victim. *People v Matuszak*, 263 Mich App 42, 50; 687 NW2d 342 (2004). Conversely, a defendant may successfully claim a double-jeopardy violation if he or she presents evidentiary support that his or her conviction of CSC-I and CSC-III were based on the same sexual penetration. See *id*. at 51.

In this case, the prosecutor concedes that defendant's convictions of both CSC-I and CSC-III was a double-jeopardy violation because the convictions resulted from a single sexual penetration that caused injury. See *id*. And this conclusion is supported by the record—TR explained that vaginal intercourse occurred one time, and the nurse identified injuries to TR's neck, thighs, lower back, buttocks, lips, and cervix. The statutory elements required to convict defendant of CSC-III are all contained within the elements required to convict him of CSC-I. See MCL 750.520b(1)(g); MCL 750.520d(1)(c). Moreover, during closing arguments before the trial court, the prosecutor acknowledged that defendant's CSC-III charge was a "mirror" of the CSC-I charge, but "with the injury removed." Therefore, the trial court sentenced defendant for a greater and lesser included offense for a single criminal act, which failed to satisfy the *Blockburger* test. See *Brown*, 432 US at 168; *Iannelli*, 420 US at 785 n 17; *Blockburger*, 284 US at 304.

Because defendant was convicted and sentenced for both CSC-I and CSC-III on the basis of the same act, his constitutional protections against double jeopardy were violated. See US Const, Am V; Const 1963, art 1, § 15; *Nutt*, 469 Mich at 574. This error was plain and obvious, and it affected defendant's substantial rights because it resulted in an additional conviction on his criminal record. Although defendant was not "actually innocent," such a blatant constitutional violation undermines the fairness and integrity of the judicial proceedings. See *McGee*, 280 Mich App at 682. "[I]t is an appropriate remedy in a multiple punishment double jeopardy violation to affirm the conviction of the higher charge and to vacate the lower conviction." *People v Herron*, 464 Mich 593, 609; 628 NW2d 528 (2001). Accordingly, we affirm defendant's conviction of CSC-I and vacate his conviction of CSC-III.

## C. SENTENCING GUIDELINES

Defendant further asserts that he is entitled to resentencing because of the double-jeopardy violation. On this point, we disagree.

Generally, a defendant is entitled to be sentenced on the basis of accurate information. *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). And "a sentence is invalid if it is based on inaccurate information." *Id*. at 89 (quotation marks and citation omitted). When determining a defendant's sentencing guidelines, the trial court must assess 10 points for prior record variable (PRV) 7 if the defendant had one concurrent conviction or was convicted of one felony after he committed the sentencing offense. MCL 777.57(1)(b) and (2)(a).

In this case, the trial court assessed 10 points for defendant's PRV 7 score. Defendant argues that those 10 points were attributable to his wrongful concurrent conviction of both CSC-I and CSC-III. However, it is clear from the record that the prosecutor attributed the 10 points to defendant's subsequent conviction of possession of a controlled substance, MCL 333.7403(2)(a)(*v*). Defendant's presentence investigation report reflects that subsequent conviction, and defendant agreed with the 10-point assessment for PRV 7 on that basis when he responded to the prosecutor's sentencing memorandum. Therefore, despite the erroneous CSC-III conviction, we affirm defendant's sentence for CSC-I because it was still based on accurate information.[3]

## III. EXCITED UTTERANCE

Defendant also claims that the trial court erred by denying defense counsel the opportunity to cross-examine Deputy Guynes with respect to the amount of time that elapsed between the event and TR's statement to Deputy Guynes. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). We do not disturb the court's discretion to admit evidence unless the decision falls outside the range of principled outcomes. *Id*. at 252. Therefore, "[a] decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*.

---

[3] We also note that defendant's minimum sentencing guidelines range would not change even if defendant's PRV 7 score were reassessed from 10 points to 0 points. If those 10 points were removed, defendant's total PRV score would change from 95 to 85 points, which would make no difference in his final PRV level (or in the applicable sentencing guidelines range). See MCL 777.62 (setting the threshold for PRV Level F at 75 or more points). When "a scoring error does not alter the appropriate guidelines range, resentencing is not required." *Francisco*, 474 Mich at 89 n 8.

## B. ANALYSIS

Generally, hearsay statements are not admissible. MRE 802. However, an excited utterance is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness. MRE 803(2). An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of the excitement that it caused." *Id*.[4]

To qualify as an excited utterance, the statement must "arise out of a startling occasion," be made "before there has been time to contrive and misrepresent" the statement, and it must "relate to the circumstances of the startling occasion." *People v Gee*, 406 Mich 279, 282; 278 NW2d 304 (1979). The excited-utterance rule focuses on the declarant's lack of capacity to fabricate the statement, rather than the lack of time to fabricate the statement. *People v Smith*, 456 Mich 543, 551; 581 NW2d 654 (1998). Although "the time that passes between the event and the statement is an important factor to be considered in determining whether the declarant was still under the stress of the event when the statement was made, it is not dispositive." *Id*. Therefore, there is no fixed limit of time for determining whether a declaration falls within the excited-utterance hearsay exception. *People v Kowalak*, 215 Mich App 554, 559; 546 NW2d 681 (1996). "The trial court's determination whether the declarant was still under the stress of the event is given wide discretion." *Smith*, 456 Mich at 552. However, it is ultimately the jury's role to assess the weight of admitted evidence and determine the credibility of a witness. *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

In this case, the trial court did not abuse its discretion when it admitted Deputy Guynes's testimony about TR's out-of-court statement because it determined that TR was still under the stress of a sexual assault when she made her statement to Deputy Guynes. See MRE 803(2); *Smith*, 456 Mich at 552. Deputy Guynes testified that TR's clothes were ripped and that she was crying when she reported that defendant had sexually assaulted her. Although Deputy Guynes confirmed that he was uncertain as to when the assault had occurred, the short time that elapsed between the event and TR's statement did not preclude the court from reasonably determining that the statement was made before there was time for fabrication, particularly given TR's appearance and conduct. See *Gee*, 406 Mich at 282; *Kowalak*, 215 Mich App at 559. The circumstances surrounding TR's disheveled appearance and extreme emotional state during her report to Deputy Guynes indicated to the trial court that the statement was reliable and admissible. Therefore, we discern no error in the trial court's determination that TR's statement to Deputy Guynes that defendant had sexually assaulted her was an excited utterance under MRE 803(2). Moreover, defendant's claim that he was denied the opportunity to cross-examine Deputy Guynes about TR's excited utterance fails because the trial court granted defense counsel's request to voir dire Deputy Guynes about the timing of the reported assault, as well as the opportunity to cross-examine him after the direct examination. For these reasons, we will not disturb the trial court's discretionary decision to admit TR's statement as an excited utterance. See *Thorpe*, 504 Mich at 251-252.

---

[4] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ___ Mich ___ (2023). There is no substantive difference between the current version of MRE 803(2) and the version in effect at the time of defendant's trial.

Affirmed in part, vacated in part, and remanded for the trial court to correct defendant's judgment of sentence accordingly. We do not retain jurisdiction.

/s/ Christopher M. Trebilcock
/s/ Mark T. Boonstra
/s/ Anica Letica